Magistrate Judge Paula L. McCandlis

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>JASON DESIMAS,<br><br>Defendant | NO. CR20-222RAJ<br><br>MOTION AND MEMORANDUM IN SUPPORT OF DETENTION |

The United States moves for pretrial detention of the Defendant, pursuant to 18 U.S.C. §§3142(e) and (f). Filed contemporaneous with this motion are three exhibits, filed under seal.

1.  **Eligibility of Case.**  This case is eligible for a detention order because this case involves (check all that apply):

    ☒   Crime of violence (18 U.S.C. 3156).

    ☐   Crime of Terrorism (18 U.S.C. 2332b (g)(5)(B)) with a maximum sentence of ten years or more.

    ☐   Crime with a maximum sentence of life imprisonment or death.

    ☐   Drug offense with a maximum sentence of ten years or more.

MOTION FOR DETENTION/
*United States v. DeSimas*, et al, CR20-222RAJ - 1

UNITED STATES ATTORNEY
700 Stewart Street Suite 5220
Seattle, Washington 98101
(206) 553-7970

☐ Felony offense and defendant has two prior convictions in the four categories above, or two State convictions that would otherwise fall within these four categories if federal jurisdiction had existed.

☐ Felony offense involving a minor victim other than a crime of violence.

☐ Felony offense, other than a crime of violence, involving possession or use of a firearm, destructive device (as those terms are defined in 18 U.S.C. 921), or any other dangerous weapon.

☐ Felony offense other than a crime of violence that involves a failure to register as a Sex Offender (18 U.S.C. 2250).

☒ Serious risk the defendant will flee.

☒ Serious risk of obstruction of justice, including intimidation of a prospective witness or juror.

2. **Reason for Detention.** The Court should detain defendant because there are no conditions of release which will reasonably assure (check one or both):

☒ Defendant's appearance as required.

☒ Safety of any other person and the community.

**Time for Detention Hearing.** The United States requests the Court conduct the detention hearing:

☒ At the initial appearance

☐ After a continuance of 3 days (18 U.S.C. 3142(f)(2))

## MEMORANDUM IN SUPPORT OF DETENTION

The United States asserts that the defendant, Jason DeSimas, poses a danger to the community as well as a serious risk of obstruction of justice based on the nature of the charged offenses. DeSimas is also considered a flight risk due to his prior criminal history that include convictions for felony drug offenses, forgery, identity theft, motor vehicle theft, assault third degree, and burglary second degree. His criminal history also

MOTION FOR DETENTION/
*United States v. DeSimas*, et al, CR20-222RAJ - 2

UNITED STATES ATTORNEY
700 Stewart Street Suite 5220
Seattle, Washington 98101
(206) 553-7970

includes a pattern of failures to appear and fugitive status, and he committed the indicted hate crime offense less than two years after having been convicted of felony drug crimes. For these reasons and the proffer of information below, it is the government's position that there are no conditions or combination of conditions that will reasonably assure the safety of the community and/or defendant's appearance at future court proceedings.

The charges in the Indictment arise out of an investigation of a racially-motivated assault of a Black man, T.S., on December 8, 2018, at a restaurant and bar in Lynnwood, Washington. In video recordings of the incident, DeSimas is depicted actively assaulting the victims by striking downward with his arms, over and over. Two of the victims identified a man with a 'devils' tattoo taunting and yelling at T.S. using the "N" word before, during, and after the assault.[1] DeSimas is also seen on a video recording, while walking out of the Rec Room, yelling at and threatening T.S. that he will "beat the brakes off" of T.S.

On December 5, 2019, a FBI agent contacted DeSimas, who voluntarily agreed to an interview. During this interview, DeSimas admitted that he was a member of Crew 38, a support club of Hammerskin Nation, a white supremacists organization. DeSimas lied to the FBI, denying that neither he nor anyone else had used the "N" word on the evening of December 8, 2018. *See* Exhibit A, Report of Interview of Jason DeSimas.

### A.   DeSimas does not Qualify for Release

Jason DeSimas has been charged with a crime of violence, specifically, Hate Crime, a violation of Title 18, United States Code, Section 249(a)(1), and must be ordered detained pending trial if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(e)(1). Danger to the community must be demonstrated by clear and convincing evidence, *see United*

---

[1] Law enforcement reports and booking photos of DeSimas for prior offenses note that he has a tattoo of a devil's face on the front of his neck.

MOTION FOR DETENTION/
*United States v. DeSimas*, et al, CR20-222RAJ - 3

*States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991), while risk of flight may be established by a preponderance of the evidence. *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir. 2019).

### B. The 3142(g) Factors Weigh in Favor of Detention.

In determining whether to release or detain a defendant pending trial, the Court considers the following factors: (1) the "nature and circumstances of the offense charged," (2) the "weight of the evidence against" the defendant, (3) the "history and characteristics" of the defendant, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). "Of these factors, the weight of the evidence is the least important, and the statute neither requires nor permits pretrial determination of guilt." *Gebro*, 948 F.2d at 1121.

#### 1. *Danger to the Community*

DeSimas assaulted and attacked T.S., a Black man, without provocation and not in defense of any other person, on the evening of December 8, 2018. Two other individuals, J.B. and A.D., attempted to intervene to protect T.S. from DeSimas and the other three co-defendants while they were beating T.S. Undeterred, DeSimas and his co-defendants also assaulted J.B. and A.D., both of whom suffered injuries. Based on video evidence, statements of the victims, and several statements of witnesses who were not associated with DeSimas, his co-defendants, and their group, DeSimas and his co-defendants were punching and striking T.S. and the other victims. During the assault, T.S. was repeatedly called the "N" word by DeSimas and others.

When DeSimas agreed to be interviewed by the FBI on December 5, 2019, he gave false statements about his actions and those of others that were intended to deceive the investigators. In particular, DeSimas alleged that the attack was not racially-

MOTION FOR DETENTION/
*United States v. DeSimas*, et al, CR20-222RAJ - 4

UNITED STATES ATTORNEY
700 Stewart Street Suite 5220
Seattle, Washington 98101
(206) 553-7970

motivated and denied the use of derogatory and racially-motivated statements made during the assault of T.S. However, the investigation has shown that, on the night of the assault, DeSimas had gathered with his co-defendants and others as part of a weekend memorial service honoring a white supremacist, Robert J. Matthews, who died during a shootout with the FBI on Whidbey Island in 1984, an annual weekend event often referred to as "Martyr's Day." Facebook records for DeSimas' Facebook accounts evidence DeSimas's participation in "Martyr's Day" activities in December 2018, as well as his belief in the inferiority of the Black race; and his active membership in Crew 38 and his support of Hammerskin Nation.[2] *See*, Exhibit B, examples of Facebook postings on DeSimas' Facebook accounts.

The government has also filed, under seal as Exhibit C, a statement by T.S. This statement describes the long-lasting and significant impact that the hate crime has had on him, that he does not know where the defendants are located, and that they could be anyone, and as a result, he is "hypervigilant" and "fearful" of his safety at all times. Entering an order of detention will ensure the safety of T.S. and the other victims and witnesses.[3]

### 2. *Risk of Flight*

DeSimas has self-surrendered, but this does not mitigate his risk of flight and non-appearance. Efforts to locate DeSimas by law enforcement have been extensive.

Over the past several weeks, law enforcement has made numerous attempts, unsuccessfully, to locate DeSimas. They have conducted dozens of instances of surveillance and spot checks on possible addresses where DeSimas may be located, as

---

[2] The Anti-Defamation League describes the Hammerskins as a national and international white supremacist organized known for violence notably against Black persons.
https://www.adl.org/education/resources/profiles/hammerskin-nation

[3] The three other co-defendants are in custody. Daniel Delbert Dorson has been ordered detained and will be transferred to this District. Randy Smith is detained in the District of Oregon, on an unrelated federal case. Jason Stanley is detained at the Idaho Department of Corrections, on an unrelated case.

MOTION FOR DETENTION/
*United States v. DeSimas*, et al, CR20-222RAJ - 5

UNITED STATES ATTORNEY
700 Stewart Street Suite 5220
Seattle, Washington 98101
(206) 553-7970

well as DeSimas' business, the Tac Town Tattoo Shop located at 8232 Pacific Avenue in Tacoma. Despite these numerous surveillance efforts, law enforcement has not seen DeSimas. They have conducted surveillance at various times of the day and night, as well as on different days of the week. Prior to these surveillance efforts, law enforcement learned that DeSimas drove a 1995 red Jeep Cherokee. This Jeep was located in early December 2020 at an apartment in the building of 4026 South Puget Sound Avenue in Tacoma. Law enforcement conducting surveillance observed that the Jeep was being used by an known associate of DeSimas, and not being used by DeSimas.

Law enforcement also tried to locate DeSimas at various addresses in Tacoma and Puyallup, as well as at the residence of DeSimas's sister.  He has not been seen at any of those addresses. Furthermore, a review of social media accounts for DeSimas appears to show that he is noting that he is at different physical locations, but again, law enforcement has not been able to observe him at any of those locations. They have also located five to ten different phones numbers that may in use by DeSimas.

On December 18, 2020, law enforcement contacted multiple individuals at multiple addresses. They claimed not to know DeSimas' phone number or current residence, and suggested that he may be in Puyallup, Graham, or Spanaway. DeSimas's address with the Department of Licensing does not appear to be current.  Certainly, since DeSimas contacted the Federal Public Defender's Office, it appears likely that at least one of the individuals whom law enforcement contacted did, in fact, communicate with DeSimas to advise him of the outstanding warrant. This leads the government to believe that associates of DeSimas will not be cooperative with any future attempts at locating him if he were to flee or conceal himself.

### C. Pre-Trial Detention at FDC SeaTac

The government anticipates that the defense will argue that pre-trial detention at FDC Sea-Tac due to the number of Covid-19 positive cases and DeSimas' health conditions. The government is unaware of any health conditions DeSimas has that would place him at high risk of contracting Covid-19.

MOTION FOR DETENTION/
*United States v. DeSimas*, et al, CR20-222RAJ - 6

UNITED STATES ATTORNEY
700 Stewart Street Suite 5220
Seattle, Washington 98101
(206) 553-7970

As for the current situation at FDC Sea-Tac, the Bureau of Prisons and FDC SeaTac have, by all objective accounts, responded to this pandemic in a reasonable manner, and have taken steps to prevent infectious outbreak and protect the health of its inmates. Fortunately, none of the inmates or staff who have contracted Covid-19 have been hospitalized nor died.

FDC Sea-Tac has advised that for new arrestees, they will be placed in quarantine and tested. Unless the new arrestee tests positive, they will have legal calls available. All individuals with COVID have been isolated and any inmate who was in the same housing unit has also been tested and is being quarantined as a precaution. FDC Sea-Tac is continuing to do its best to follow the CDC recommendations for Corrections and Detention facilities. https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. Only inmates who have tested positive and in isolation are restricted from placing legal calls, and even that restriction is in place until January 4, 2021, to prevent exposure risk to staff. Isolated inmates with Covid-19 are still able to get legal mail and to send any ail out of the institution. All inmates also have access to medical care at any time, regardless of whether they have Covid-19.

The FDC's pandemic restrictions are designed to protect DeSimas's health and well-being, and such measures will not violate his right to due process. In *United States v. Casey*, CR20-0020-RAJ, the Court rejected defendant's due process claim due to the legitimate governmental objective of protecting individuals from COVID-19, explaining as follows:

> The Court considers protecting individuals from COVID-19 to be a legitimate government objective. All of the conditions cited by Defendant as punitive are, in fact, the prison officials' efforts to protect detainees from a COVID-19 outbreak, or a result thereof: (1) the lockdown of Defendant's housing unit; (2) the prohibition of face-to-face meetings with counsel; (3) the ban on family visits; (4) the inability to access substance abuse treatment, which allegedly deprives him of medical care. Id. at 6. The safety precautions implemented as a result of COVID-19, both within and outside of FDC SeaTac, are challenging, but they serve a legitimate government objective and thus do not amount to punishment.

MOTION FOR DETENTION/
*United States v. DeSimas*, et al, CR20-222RAJ - 7

UNITED STATES ATTORNEY
700 Stewart Street Suite 5220
Seattle, Washington 98101
(206) 553-7970

1 | *United States v. Casey*, CR20-0020-RAJ, at Dkt. 63.

2 |     Importantly, nothing about the COVID-19 pandemic mitigates the danger that DeSimas poses to others or his risk of nonappearance.  See 18 U.S.C. § 3142(e)(1).

    The Bail Reform Act, however, prohibits categorical grants or denials of bail that are untethered from an individualized determination of the factors set forth in § 3142(g). *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).  To be sure, the Bail Reform Act instructs the Court to consider a defendant's own "physical and mental health" in determining "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(g)(3)(A).  For example, if a defendant suffers from a serious medical condition that is either incapacitating or requires constant medical care, it may be reasonable to infer that this condition makes the defendant less likely to flee or less of a risk to the community (depending, of course on his past criminal

//
//
//
//
//
//
//
//
//
//
//
//
//
//

MOTION FOR DETENTION/
*United States v. DeSimas*, et al, CR20-222RAJ - 8

UNITED STATES ATTORNEY
700 Stewart Street Suite 5220
Seattle, Washington 98101
(206) 553-7970

history and the nature of his current offense).  But the general existence of a pandemic does not have significant bearing on whether a non-symptomatic defendant's actual "physical and mental health" weighs in favor of release.

DATED this 21st day of December, 2020.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney


*s/Ye-Ting Woo*
YE-TING WOO
Assistant United States Attorney


*s/Christine M. Siscaretti*
CHRISTINE M. SISCARETTI
Trial Attorney
Criminal Section, Civil Rights Division

700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970
Ye-Ting.Woo@usdoj.gov
Christine.Siscaretti@usdoj.gov

MOTION FOR DETENTION/
*United States v. DeSimas*, et al, CR20-222RAJ - 9

UNITED STATES ATTORNEY
700 Stewart Street Suite 5220
Seattle, Washington 98101
(206) 553-7970