THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR20-222-RAJ |
| Plaintiff, | ) ) | MOTION TO REVIEW AND REVOKE |
| v. | ) ) ) | MAGISTRATE JUDGE'S DETENTION ORDER AND MEMORANDUM OF LAW IN SUPPORT |
| JASON DESIMAS, | ) ) | Oral Argument Requested |
| Defendant. | ) ) | Noted for January 1, 2021 |

Jason DeSimas respectfully moves this Court to revoke the magistrate judge's detention order and promptly release him pending trial with the conditions recommended by Pretrial Services in its December 21, 2020 report. 18 U.S.C. § 3145(b); Local Rule W.D. Wash. MJR 11.

## I.   Introduction

The Bail Reform Act requires a court to impose only the least restrictive conditions necessary to reasonably assure a defendant's appearance and the safety of the community. The magistrate judge misapplied the legal standard and relied on incomplete facts provided by the government to find that no condition or combination of conditions could reasonably assure Mr. DeSimas's appearance, and that he posed a danger to the community.

Mr. DeSimas is not a flight risk. He has lived in Washington for the past 20 years and has been working as a tattoo artist for the last 17. He has strong ties to this community and is someone that other people trust and rely on. *See* Exhibit 1 (letters of

MOTION TO REVIEW AND REVOKE
DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 1

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

support). He has known that this case was being investigated since December of 2018. He was questioned by law enforcement about it. And at no time did he flee or in any way try to avoid apprehension. Mr. DeSimas has a stable residence where he lives with a roommate and her young, autistic child. Despite COVID guidance diminishing his business, he remains financially stable, will attend every court hearing, and will comply with any conditions set.

Mr. DeSimas is also not a danger to the community. The allegations against Mr. DeSimas are serious and he does not take them lightly. He has been in the community, working and without incident, since the alleged altercation underlying these charges occurred. He has not posed or made any threat to the alleged victims or to anyone else around him, nor will he simply because he has finally been charged.

## II.   Memorandum of Law in Support of Motion

### A.   Standard of Review

This Court's review is *de novo*. *See* 18 U.S.C. § 3145(b); *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990). This Court reviews the evidence before the magistrate judge and any additional evidence proffered by the parties and will "make its own independent determination whether the magistrate's findings are correct with no deference." *Koenig*, 912 F.2d at 1193.

The Bail Reform Act (BRA) provides for release of a person upon "any condition or combination of conditions" if those conditions "will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Where a statutory presumption of detention applies, the burden is on the defendant to show some evidence in rebuttal. However, the burden is not substantial—if a defendant produces *any* credible evidence as to one of the § 3142(g) factors, it is met. The burden then shifts back to the prosecutor to prove, by clear and convincing evidence, that no condition or combination of conditions could

MOTION TO REVIEW AND REVOKE
DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 2

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

reasonably secure the safety of the community, and flight risk by a preponderance of the evidence. *See* John L. Weinberg, Federal Bail and Detention Handbook 2018 [6.11], PLI Press (New York, 2018); *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) ("If a defendant proffers evidence to rebut the presumption of dangerousness, the court considers four factors in determining whether the *pretrial detention standard* is met…") (emphasis added); *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) ("The burden of production is not a heavy one to meet.") (burden of production met when defendant comes forward with some evidence that he will not flee or endanger the community if released).

Mr. DeSimas produced credible evidence that rebuts the presumption, and because the government cannot meet its burden to show there are no conditions or combination of conditions that would reasonably assure Mr. DeSimas's appearance or protect the community, the Court should order his release pursuant to appropriate conditions.

### B.    Mr. DeSimas Rebutted the Presumption of Detention.

As noted above, Mr. DeSimas does not need to provide evidence related to each of the § 3142(g) factors in order to rebut the presumption. Nonetheless, he has proffered ample evidence and the burden returns to the government to prove that no conditions can be imposed to mitigate risk of flight or danger.

Mr. DeSimas has presented substantial evidence related to each of the § 3142(g) factors, any one of which would be sufficient to rebut the presumption. As just one example, Mr. DeSimas has showed his strong ties to the community through the tattooing industry and his commitment to this type of work for 17 years here in Washington. He employs three other people at his business and has had multiple apprentices who have worked their way up thanks to his tutelage. He has also

MOTION TO REVIEW AND REVOKE
DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 3

demonstrated his willingness to abide by strict court orders and restrictions by graduating from the King County Felony Drug Treatment Court program in 2017.

### C.   The Government Cannot Prove that Mr. DeSimas Poses a Risk of Flight.

The government cannot show by a preponderance of the evidence that Mr. DeSimas poses a risk of flight, much less a risk of flight that cannot be mitigated by appropriate conditions. First, and most importantly, Mr. DeSimas contacted counsel and arranged his self-surrender in this case within an hour of learning that he was being sought by law enforcement.

In the late morning on Friday, December 18, 2020, Mr. DeSimas was alerted to the fact that the F.B.I. was attempting to execute the arrest warrant in this case. Shortly thereafter, he contacted the Federal Public Defender's Office. Undersigned counsel then contacted the assigned Assistant United States Attorney and informed her that Mr. DeSimas would self-surrender at the federal courthouse in downtown Seattle on Monday, December 20, 2020. On Monday morning, December 20, 2020, Mr. DeSimas was in downtown Seattle to self-surrender on the warrant at 7:45 a.m. and had to wait until the courthouse opened and there was a deputy prepared to process him. Mr. DeSimas is *not* a flight risk.

The government's argument that Mr. DeSimas posed a risk of flight fell into two broad categories: (1) that Mr. DeSimas's history of failures to appear and warrants showed a disregard for court orders and (2) that law enforcement couldn't find him in any of the places it thought he should be.

First, as to Mr. DeSimas's warrant and "FTA" history—it is dated and it is almost entirely related to driving offenses. Mr. DeSimas owes child support. As the Court knows, in Washington State, an individual's driver's license can be suspended for failure to pay a child support order. When Mr. DeSimas is keeping current with his

child support payments, as he has been lately, his license is in good standing. When he is not keeping current with these payments, it is suspended and he is pulled over and charged with driving on a suspended license.

Mr. DeSimas's failure to pay fines or to appear at court appearances he is notified of through a ticket and a mail summons is not indicative of his willingness to appear for his federal court appearances or comply with federal pretrial supervision. It is far more probative that Mr. DeSimas self-surrendered in this case, has been free from law enforcement contacts for the past two years, and has completed all probation and supervision requirements imposed upon him—including the intensive requirements of King County's Felony Drug Treatment Court.

As to its second argument, the government seems to contend that Mr. DeSimas was somehow evading law enforcement for lengthy periods of time before the indictment was unsealed in this case. Not only is this directly contrary to its argument alleging that he is a danger now that the charges are unsealed, it's simply not logical. The fact that law enforcement had stale information about what car Mr. DeSimas was driving in or his business hours isn't indicative of Mr. DeSimas evading them. People buy new cars. Mr. DeSimas also works in an industry where fluctuating hours are not entirely uncommon based upon changes in artist staffing and availability, traffic, and the like. Finally, precipitous drops in traffic combined with changing state guidance regarding business operations has caused countless Washington businesses to alter their hours, often multiple times, during the pandemic.

On the morning of December 18, 2020, which is the first time that law enforcement attempted to execute the warrant issued in this case, they went to his residence, his business, and his sister's home (where he does not live). He wasn't at any of these places. Not because he was avoiding being arrested by the F.B.I., but because he was out picking up food. According to people who spoke to law enforcement that

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

day, there were ominous comments made by the agents about needing to find Mr. DeSimas "before Antifa did" for his own safety. Whether or not these individuals provided the information sought by the F.B.I., *Mr. DeSimas* did not evade or avoid this case, the warrant, or law enforcement. He did exactly what the Court and government want a defendant to do when they learn there is a warrant for their arrest—he contacted defense counsel and arranged to turn himself in at the earliest practicable date.[1] He remained at liberty over the weekend, and—as promised—arrived at the federal courthouse at 7:45 a.m., prepared to self-surrender on the warrant.

The government has fallen far short of meeting its burden to show that Mr. DeSimas is a flight risk. His life is in this District. His family, his business, and his livelihood are here. He has a job, he has a stable residence, and he has already shown that he will comply with court orders in this case, through both his self-surrender and track record with supervision in the past through King County Felony Drug Treatment Court.

### D.    The Government Cannot Prove that No Conditions Would Reasonably Assure Community Safety.

Because Mr. DeSimas has rebutted the presumption of detention, the government bears the burden of persuasion to show by clear and convincing evidence that no combination of conditions would "reasonably assure" the safety of the community. This Court must not look to whether it can "guarantee" community safety, but rather whether conditions or a combination of conditions can reasonably assure such safety. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). In close cases,

---

[1] Given Mr. DeSimas's health issues and in an attempt to avoid any unnecessary exposure to COVID-19, defense counsel contacted the assigned AUSA to coordinate his self-surrender on Monday morning, all but ensuring that he would be on the magistrate judge's calendar that afternoon. It was too late in the day on Friday for him to surrender and still be seen that day, which would have meant he would have spent the weekend at the Federal Detention Center, which is currently contending with an escalating COVID-19 outbreak.

MOTION TO REVIEW AND REVOKE
DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 6

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

"[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention…." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Calif. June 18, 1992) (*citing United States v. Motamedi*, 767 F.2d 1403, 1405–06 (9th Cir. 1985)).

The government failed to meet this burden. Pretrial Services recommended release under stringent conditions, including GPS monitoring, a drug assessment, treatment and testing, and orders not to contact individuals involved in the case. These are the conditions that the magistrate judge should have imposed upon Mr. DeSimas, not detention.

This Court's independent, non-deferential review of whether the government has met its burden considers four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). A fair and impartial consideration of these four factors compels the conclusion that the least restrictive means of reasonably protecting the community is releasing Mr. DeSimas on active GPS location monitoring under Pretrial Services supervision.

### i.   *The nature and seriousness of the offense*

Mr. DeSimas does not dispute that he has been accused of serious crimes. Nor does he minimize the allegations against him. However, with the exception of one single third-degree assault conviction from 2003—more than a decade ago—there is nothing in Mr. DeSimas's history that involves any assaultive or violent behavior. Nor are there any prior firearms or weapons charges.

MOTION TO REVIEW AND REVOKE
DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 7

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1      Despite its claim that Mr. DeSimas poses such a grave danger that he must be

2  detained, the *federal government took two years to bring the charges in this case.*

3  During those two years, Mr. DeSimas remained in the community, working and living,

4  without any incident. At the detention hearing, however, the government explained the

5  delay by arguing that the "grand jury" investigated this case and that the grand jury

6  proceedings were delayed because of COVID-19—hence the delay in the indictment.[2]

7      First, as this Court knows, many cases are initially filed by complaint in this

8  District, both before and after the COVID-19 pandemic. During the COVID-19

9  pandemic, while grand juries were unavailable, the government received extensions of

10  the indictment deadline in many cases where an indictment could not be secured.

11  However, even if an indictment was preferred by the government in this case, it has

12  managed to secure indictments in countless other cases for the last five months, despite

13  COVID-19. The resumption of grand jury proceedings was a priority in this District and

14  the government has managed to get indictments filed at a breakneck pace since July.

15      The government's decision on how to present and prosecute this case simply

16  does not support detaining Mr. DeSimas—in fact, it weighs in favor of release. The

17  government chose to prosecute this case the way they did, and at the speed they did,

18  knowing that Mr. DeSimas would be at liberty throughout. They did so knowing that

19  his co-defendants would be at liberty throughout. Moreover, whether the government

20  had good reason for the delay in indictment does not change the fact that Mr. DeSimas

21  has lived in the community without incident for the past two years.

22

23

---

24  [2] Defense counsel believes that it is the government's policy to consult with the Department of
Justice on cases involving allegations of hate crimes. This policy does not change the calculus

25  or rationalize the two-year delay between the alleged incident and the date of indictment. If the
Department of Justice believed that Mr. DeSimas posed a danger to the community, this

26  consultation should not have stood in the way of an expedited investigation and approval for
any charges.

MOTION TO REVIEW AND REVOKE
DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 8

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

At the detention hearing, the government also argued that the unsealing and public filing of the charges against Mr. DeSimas would make him more of a danger because he now knows that this case was being investigated and that witnesses were cooperating. This argument is not credible and should be dismissed because it wholly ignores the incredibly public nature of the initial incident including extensive media coverage, that arrests were actually made back in 2018, and that the government contacted Mr. DeSimas about this investigation a year ago.

This case was initially filed in Snohomish County after a number of individuals alleged to be present at the altercation were arrested outside the bar *on the same night it happened*. *See* Gene Johnson (Associated Press), "Police, FBI probe suspected white supremacist attack on DJ in Lynnwood," Kitsap Sun, December 12, 2018, avail at https://www.kitsapsun.com/story/news/local/2018/12/10/police-fbi-probe-suspected-white-supremacist-attack-dj-lynnwood/2272207002/. Mr. DeSimas certainly knew that the investigation was ongoing as, approximately a year later (but a year before the case was filed), the F.B.I. questioned him about the events of that evening. *See* Exhibit A to Government Motion for Detention (Dkt. 17) (filed under seal). The filing and unsealing of the indictment on December 18, 2020 was far from the first time Mr. DeSimas learned of the investigation, nor was it a new disclosure that individuals have been cooperating with the investigation—multiple people he knew were subpoenaed to testify.[3]

---

[3] At Mr. DeSimas's detention hearing, the government mentioned a social media post attributed to Mr. DeSimas asking whether an individual had to comply with a subpoena or if they could just not respond. It argued that this post indicated disdain for the legal process or an unwillingness to comply with court orders. Another interpretation of this question is that it is exactly the type of legal question many people crowdsource answers to on social media apps— and is nothing more nefarious than asking whether a person can be penalized for not doing something that is generally not regarded as a pleasant experience.

MOTION TO REVIEW AND REVOKE
DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 9

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1    The government's attempts to use its own delay in filing this case to argue for

2  Mr. DeSimas's detention, despite his law-abiding behavior in the interim, should be

3  rejected. Mr. DeSimas knew that the investigation was active and ongoing.

4  Nevertheless, he did not flee, nor did he commit any other crime. He does not pose a

5  danger to the community—and certainly does not pose a danger to the community that

6  cannot be managed through conditions including pretrial supervision with GPS

7  monitoring.

8              *ii.    Weight of the evidence*

9         The weight of the evidence "can be considered only in terms of the likelihood

10  that the person will fail to appear or will pose a danger to any person or to the

11  community." *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). Because

12  this case was filed as an indictment, and defense counsel has received only the

13  discovery used by the government in support of its motion for detention, it is unclear

14  how strong the government's evidence is. However, the statute that creates the crime

15  charged in this case is not simply a general intent assault statute. It requires that the

16  government prove a "but-for causality"—that the assault occurred *because of* the

17  victim's actual or perceived race. *United States v. Miller*, 767 F.3d 585, 591 (6th Cir.

18  2014) (internal citations omitted). Merely showing that an individual both committed an

19  assault and has held racist or prejudiced beliefs is not sufficient.

20         The weight of the evidence is the least important factor for the Court to consider.

21  The Bail Reform Act mandates release even when the evidence strongly weighs in

22  favor of conviction if the person's appearance and community's safety can be

23  "reasonably assured" by release conditions. *See Motamedi*, 767 F.2d 1403, 1408 (9th

24  Cir. 1985).

25

26

MOTION TO REVIEW AND REVOKE
DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 10

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

### iii.    Mr. DeSimas's "history and characteristics"

Mr. DeSimas has lived in Washington since 2001. Before that he lived in California and Nevada. He was raised by his parents and grandparents and his childhood was not easy. However, Mr. DeSimas has found success as a tattoo artist and business owner. Ex. 1. It is what he loves and it has allowed him to give back to others, as well. As noted in the Pretrial Services Report and in the letters of support, Mr. DeSimas has been able to hire three employees who rely upon his business to support their families. *Id.*

Mr. DeSimas has three adult children and is also now a proud grandfather to a toddler. He has struggled with opiate addiction and abuse throughout much of his adult life, but has successfully achieved lengthy periods of productivity and sobriety. Mr. DeSimas is also a valued friend—someone who can be counted on and who has shown great care and empathy for individuals going through difficult periods of life. *Id.*

Mr. DeSimas's does have a criminal history—primarily convictions for driving on a suspended license. His felony history is made up of property and drug-related offenses. He does not have an extensive history of violent crime or of firearms and weapons-related charges. Moreover, as already mentioned, he has accessed substance abuse treatment through a case in King County. This demonstrates that he will take advantage of, and comply with, court-ordered treatment and that he can be successful in such treatment. Thus, while the fact of his convictions has an aggravating component, his compliance with court-ordered treatment and other drug treatment court requirements weighs in favor of release.

### iv.    The nature and seriousness of the danger to any person or the community posed by release

If released, Mr. DeSimas poses no danger to any victim, or to the community. Pretrial detention must be based on something more than speculation. The incident alleged in this indictment occurred more than two years ago. In the interim,

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

Mr. DeSimas has not had any law enforcement contacts or other incidents, nor has he fled, despite knowing that an investigation was ongoing and that he could potentially be charged with a federal crime. Mr. DeSimas has no incentive to jeopardize his liberty or his case by contacting any of the alleged victims, witnesses, or co-defendants.

The conditions recommended by Pretrial Services include supervision and location monitoring. Mr. DeSimas will comply with his conditions of release, which are sufficient to mitigate any concerns the Court might have about danger to the community or risk of flight.

### E.    The Unprecedented, Deadly Situation at FDC Supports Release

The Federal Detention Center's inability to control and manage the COVID-19 pandemic weighs in favor of release. Although not directly addressed at Mr. DeSimas's detention hearing, all parties in this district receive regular updates on the status of COVID-19 at the FDC. Additionally, this Court's review is *de novo*.

The government's motion to detain makes a number of concerning misrepresentations about the situation at FDC. First, it claims that no inmate or staff has been hospitalized due to COVID-19. This is not true. The government provided no evidence in support of this statement and public filings in this and other districts demonstrate that it is incorrect. In fact, more than two months ago an inmate housed at FDC SeaTac was hospitalized in an intensive care unit and was denied access to his counsel until an emergency motion was filed and relief was ordered. *See United States v. Gonzalez*, No. 16-00067-05-JAM (E.D. Ca., September 22, 2020) (Order Denying Government's Motion for Reconsideration, Dkt. 249) (detailing hospitalization of FDC SeaTac inmate after a positive COVID test). While this case was not litigated in this District, the United States Attorney's Office receives regular updates regarding the status of COVID-19 at the FDC and was contacted regarding this case. At a minimum,

MOTION TO REVIEW AND REVOKE
DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 12

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

the government could and should have confirmed that its statement was correct before arguing it to the Court.

Second, Mr. DeSimas suffers from lung damage after two separate incidents left his lungs compromised. He has had tubes inserted into his lungs and his understanding is that one of his lungs never properly re-inflated after it collapsed due to severe trauma. In addition, Mr. DeSimas had to have his spleen removed after a motorcycle accident and currently suffers from a hernia where the incision for this surgery herniated.

While Mr. DeSimas will initially be placed in quarantine at FDC, it is unclear whether this keeps him safe. As of the date of Mr. DeSimas's detention hearing, on December 21, 2020, FDC reported that 97 inmates were COVID-19 positive. A day later, on December 22, 2020, that number had increased to 133. Mr. DeSimas is not asking the Court to consider "the general existence of a pandemic" in releasing Mr. DeSimas from FDC. Government Motion for Detention at 9 (Dkt. 16) (filed under seal). He is asking the Court to consider the exponentially higher chance of Mr. DeSimas contracting a deadly virus to which he has specific vulnerabilities at the FDC, where the virus now spreads with seeming impunity.

Any government argument about the FDC's ability to keep inmates safe from COVID-19 should be taken in the context of previous representations made by the government over the course of the past nine months. It also bears noting that the current outbreak is the *second* COVID-19 outbreak at the FDC, and also the largest.

First, the government argued that COVID-19 would not, and had not, infiltrate the walls of the FDC and so defense motions for release were premature and unwarranted. Then, when COVID-19 did, predictably, infiltrate the FDC and the initial surge happened, they assured the Court that FDC had it under control through its strict COVID-19 protocols. Now, with daily mounting numbers in the general population units a clear indication that FDC's quarantine and isolation protocol has totally failed,

MOTION TO REVIEW AND REVOKE
DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 13

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

the government instead falls back on the argument that—despite the uncontrolled spread, the lack of meaningful access to counsel or family for inmates at FDC, and no indication that the numbers of infected inmates or staff are decreasing or remaining stable—inmates and counsel can still communicate via "legal mail." Government Motion for Detention at 7 (Dkt. 16) (filed under seal). This argument ignores that legal mail is an ineffective and slow method of communicating, particularly about time-sensitive issues. It also completely disregards clients who cannot read or write effectively. It also ignores the current Administration's abandonment of the United States Postal Service, which has made communication by mail delayed and unpredictable—despite the fact that it is the most accessible and inexpensive option for inmates in jails and prisons across America.

Mr. DeSimas has managed to protect himself against COVID-19 infection since March of 2020. He will not be able to do this at the FDC. Placing him in pretrial detention all but guarantees that he will contract the virus and leaves his health and wellbeing at risk.

### III. Conclusion

Mr. DeSimas is neither a danger to the community nor a risk of flight. Even if the Court finds that he is, there are conditions that can be ordered in an appearance bond that will protect the community and reasonably assure that Mr. DeSimas make all of his future court appearances. This Court should order Mr. DeSimas released with the standard and special conditions recommended in the Pretrial Services Report.

DATED this 23rd day of December 2020.

Respectfully submitted,

s/ *Sara Brin*
Assistant Federal Public Defender
Attorney for Jason DeSimas

MOTION TO REVIEW AND REVOKE
DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 14

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**