THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR20-222RAJ |
| Plaintiff | |
| v. | GOVERNMENT'S RESPONSE TO MOTION TO REVIEW AND REVOKE DETENTION ORDER |
| JASON DESIMAS, | |
| Defendant. | |

The United States of America, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and Ye-Ting Woo, Assistant United States Attorney for said District, and Christine M. Siscaretti, Trial Attorney, Civil Rights Division, U.S. Department of Justice, submits this response in opposition to Defendant Jason DeSimas's Motion to Review and Revoke the Magistrate Judge's Detention Order (Dkt. No. 21).  The government further incorporates, by this reference, its motion for detention and memorandum in support, along with sealed Exhibits A, B, and C, as though fully restated herein.[1]  Dkts. 16, 17.

Defendant DeSimas and his codefendants are charged in an Indictment with hate crimes and false statements relating to a racially-motivated assault of a Black man, T.S., and two other men who intervened in aid of T.S. *See*, Indictment, Dkt. No. 1. DeSimas is

---

[1] The sealed Exhibits are:  Exhibit A, Report of Interview of Jason DeSimas; Exhibit B, postings on DeSimas's Facebook accounts; and Exhibit C, statement of T.S. for detention hearing.

GOVERNMENT'S RESPONSE TO MOTION TO REVIEW
AND REVOKE DETENTION ORDER /*United States v. Jason DeSimas*,
CR20-222RAJ - 1

a self-proclaimed white supremacist, along with his codefendants, and they are members of a national white supremacist group, Hammerskin Nation, and/or its support club, Crew 38. In the early morning hours of December 8, 2018, DeSimas and approximately 16 other men and women who were associated with, supporters of, and/or members of Hammerskin Nation and/or Crew 38 went to a restaurant and bar business in Lynnwood, Washington. Within 30 minutes of arriving, T.S., who was volunteering as a DJ for the business that night, was assaulted by DeSimas, Jason Stanley, Daniel Delbert Dorson, and Randy Smith, because of T.S.'s actual or perceived race. Before, during, and after the assault, racially-derogatory comments, including the word 'n—ger," were yelled and directed at T.S., by the defendants and others. Two other men, J.B. and A.D., who were not associated with DeSimas's group, intervened in an effort to protect T.S., and they, too, were assaulted and suffered bodily injury. While leaving the business, DeSimas was captured on video, threatening to "beat the brakes off" T.S.

DeSimas should continue to be detained pending trial.  His criminal history dates back to 1994, including felony convictions for assault third degree and burglary second degree (May 2003); heroin and marijuana possession (October 2010); identity theft second degree (December 2010); forgery (March 2011); taking motor vehicle without permission (August 2014); and possession of heroin with intent to deliver (March 2016). *See* Pretrial Services Report, dated December 21, 2020. DeSimas has 13 warrants for failure to appear, along with two fugitive warrants in his criminal record. In December 2018, when the current offense occurred, DeSimas was on unsupervised probation with Pierce County District Court and Bonney Lake Municipal Court. *Id.* Moreover, on December 8, 2018, DeSimas fled from the scene in a car, knowing the police were en route in response to the assault of T.S. A year later, when questioned by federal agents, DeSimas lied about his involvement and knowledge of the assault.

A detention hearing was proper in this case because DeSimas is charged with a crime of violence; because there exists a serious risk that DeSimas will not comply with court orders; and because there is a serious risk that DeSimas will obstruct justice and

GOVERNMENT'S RESPONSE TO MOTION TO REVIEW
AND REVOKE DETENTION ORDER /*United States v. Jason DeSimas,*
CR20-222RAJ - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

threaten, injure, or intimidate a prospective witness. 18 U.S.C. § 3142(f)(1), (f)(2). The government maintains that no condition or combination of conditions can reasonably assure the appearance of DeSimas or the safety of any other person or the community, pursuant to Title 18, United States Code, Section 3142(e)(1).  Magistrate Judge Paula L. McCandlis properly considered all of the factors under the Bail Reform Act (BRA) and entered an order of detention.  Dkt. No. 20.  Under *de novo* review by this Court, detention of DeSimas is appropriate and warranted and this Court should deny the motion to revoke detention order without a hearing.

# I. <u>RELEVANT BACKGROUND</u>

## A.  Grand Jury Indictment and Detention Hearing

On December 16, 2020, a federal grand jury in this District returned a seven-count Indictment under seal charging the defendants with Hate Crime, in violation of Title 18, United States Code, Sections 2 and 249(a)(1), and False Statements, in violation of Title 18, United States Code, Section 1001. Dkt. No. 1. Arrest warrants were issued for the defendants.

FBI agents attempted to locate DeSimas at various addresses, including the address in Puyallup, Washington, to which he seeks release. Agents went to this address and spoke with C.M. As proffered by the government at the detention hearing, agents asked C.M. about DeSimas, and she advised that she had not seen him for two weeks, and denied that DeSimas lived with her.[2]  Agents also contacted DeSimas's sister, and she too advised that she did not know where he was living, that he could be living with one of two girlfriends, and that she would encourage him to self-surrender.

---

[2] During the detention hearing, defense counsel argued that C.M.'s autistic son was present and she did not want to discuss DeSimas with agents in front of her son. If true, then C.M. cannot be relied upon to provide accurate and trustworthy information to Pretrial Services, in the event DeSimas is released and absconds. Rather than lying to agents, C.M. could have told them that DeSimas was not home, and that she would inform him that the FBI was looking for him.

Counsel for defendant notified the government that DeSimas was willing to self-surrender on the morning of Monday, December 21, 2020. He did so, and an initial appearance and arraignment were held the same day.  The United States moved for detention, Dkt. No. 16.

Magistrate Judge McCandlis, after weighing the BRA factors, such as the nature and circumstances of the offense, history and characteristics of the defendant, history of nonappearance, and DeSimas's risk of danger, Judge McCandlis found that no conditions could reasonably assure the defendant's appearance and the safety of the community. *Id.* On December 23, 2020, DeSimas filed the instant motion.

## II. <u>ARGUMENT</u>

### A.   **Legal Framework**

A District Court reviews *de novo* a magistrate judge's order for pretrial detention. *United States v. Koenig*, 912 F.2d 1190, 1992-93. (9th Cir. 1990). The determination to detain a defendant pending trial is governed by the BRA. 18 U.S.C. § 3142.

Under the rubric of the BRA, a Magistrate Judge shall hold a detention hearing in a case that involves a "crime of violence" or other enumerated offenses, 18 U.S.C. § 3142(f)(1)(A), or if there is a serious risk that the defendant will flee, obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure or intimidate, a prospective witness or juror, 18 U.S.C. § 3142(f)(2). If, following a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending trial. 18 U.S.C. § 3142(e). In making its determination, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

GOVERNMENT'S RESPONSE TO MOTION TO REVIEW
AND REVOKE DETENTION ORDER /*United States v. Jason DeSimas*,
CR20-222RAJ - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

**B.   Defendant Poses a Risk of Obstructing Justice, Intimidating Witnesses, and Flight from Prosecution**

DeSimas poses a risk of obstructing justice, a risk of intimidating witnesses, is a danger to the community, and is a risk of flight. As noted above and in the Pretrial Services Report, DeSimas has a lengthy criminal history that include felony convictions, prior felony assault offense, 13 failures to appear, two fugitive warrants, and committing new law violations while on probation, including the instant offenses.

As to the risk of obstructing justice and danger to the community, on December 8, 2018, after beating and striking T.S., DeSimas continued to yell and threaten that he would assault T.S. again, before fleeing the scene of his commission of a hate crime to evade responding officers. Law enforcement was able to stop two vehicles fleeing the business, and arrested eight individuals. DeSimas, however, fled in a separate vehicle that evaded law enforcement. His identity was unknown until law enforcement was able to obtain video evidence and learned, through witness interviews, criminal history records, photographic evidence, and social media records, the identity of DeSimas and the other approximately16 members of his group.

DeSimas, along with the co-defendants, Jason Stanley, Daniel Delbert Dorson, and Randy Smith, indicted for hate crimes based on their assault of T.S., J.B., and A.D, also made misleading and false statements to the FBI agent. When contacted by FBI in December 2019 about the December 2018 assault, each lied to federal agents as described in the indictment.

On December 5, 2019, DeSimas agreed to a voluntary interview with FBI agents. *See* Dkt. 17, Exhibit A. In that interview, DeSimas denied any racial bias or intention of

GOVERNMENT'S RESPONSE TO MOTION TO REVIEW
AND REVOKE DETENTION ORDER /*United States v. Jason DeSimas,*
CR20-222RAJ - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  targeting a black person. He claimed the DJ had attacked one of his friends, and that
2  DeSimas got involved because the DJ had called him a "bitch." He denied anyone using
3  any racial slurs, particularly the 'n—ger' word. Through the false statements of denying
4  that neither he nor anyone else, on December 8, 2018, used the 'n—ger" word, or that the
5  assault of T.S. was not motivated by T.S.'s race, DeSimas knowingly misled agents and
6  attempted to divert their attention and focus of the investigation. He made these false
7  statements to law enforcement in attempt to cover up that he and his accomplices had
8  committed a hate crime.

9      While denying that the assault of T.S. and others was racially-motivated, DeSimas
10 admitted to FBI agents that he harbored some racial bias. For example, DeSimas described
11 himself and those whom he associates with as white, working class people, seeking to
12 "secure the existence of the white race by staying with (their) own people." He explained
13 that he does not have anything in common with black people and would not "invite them
14 over for Thanksgiving." DeSimas considers himself to be a separatist, and told agents that
15 the day that "a nice little white baby isn't born is going to suck." DeSimas also admitted
16 to being a member of Hammerskin Nation.

17     DeSimas argues that he is not a flight risk because he has resided and worked in
18 Washington State since 2001. However, DeSimas and people close to him have given
19 conflicting information about the specific addresses he has lived and how long he has lived
20 there. The Pretrial Services Report notes that DeSimas claimed to be living at the address
21 in Puyallup with C.M. for the last year, and that C.M. stated he had lived there for "the last
22 five months, maybe longer." On December 30, 2020, a FBI agent contacted C.M. and one
23 of DeSimas's girlfriends, G.W., at the Puyallup residence. C.M. confirmed that she had
24 told the agent, on December 18, 2020, that DeSimas did not live with her. The agent also
25 spoke with G.W. at the residence. G.W. stated that she and DeSimas have been 'staying'
26 at the Puyallup residence for three to four months. C.M. then tried to explain that 'staying'
27 and 'living' at her residence were different, but did not further elaborate. C.M. claimed that
28 G.W. and DeSimas do 'stay' at her residence. These inconsistent statements by C.M., and

GOVERNMENT'S RESPONSE TO MOTION TO REVIEW
AND REVOKE DETENTION ORDER /United States v. Jason DeSimas,
CR20-222RAJ - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

DeSimas' claim that he lived with C.M. at the Puyallup residence for the past year, render release to this address to be inappropriate. Moreover, public records for DeSimas show a different address than the Puyallup address.

DeSimas further argues that the government's concern for his danger to the community and risk of nonappearance is misplaced due to the length of the investigation and return of an indictment two years after the crime. The investigation has been lengthy and extensive, and many of the witnesses, including other Crew 38 members who were with DeSimas and the co-defendants, are out-of-state. Of the approximately 17 members of DeSimas's group that were at the bar on December 8, 2018, identities and whereabouts of ten of them, including DeSimas, were unknown, requiring law enforcement to review video recordings, records, social media accounts, and witness interviews to confirm their identities. Moreover, there were many other people in the bar that evening, unrelated to DeSimas's group, that also needed to be identified and contacted. These efforts, as well as learning the specific role and conduct of each witness in the bar, were laborious and time-consuming.  The government's efforts to conduct a thorough investigation does not mitigate its concerns for the danger posed by DeSimas and other defendants, and a rush to judgment with the filing of a criminal complaint was not appropriate in this case.

The government believes that danger, including potential intimidation of witnesses and obstruction of justice, are very real if DeSimas is released.[3] It is likely that DeSimas believed that his misleading and untruthful statements to the FBI had successfully thwarted their attention on him. Now that he has been indicted and the details of the government's investigation, including contacts with numerous witnesses, will be made known to him, the government believes that DeSimas poses a danger to other persons, including witnesses, and may influence others to lie on his behalf or evade contact by law enforcement.[4]

---

[3] The government notes T.S.'s fear for their safety as expressed in T.S.'s statement to the Court. Dkt. 17, Exhibit C.
[4] Exhibit B at 2 is a screen shot of the tweet by DeSimas. Contrary to DeSimas's argument that he was merely seeking legal advice on how to respond, the language and tone of the remark, "f** it I'm not going to go" is more likely DeSimas giving out the advice to others to elude law enforcement contact.

GOVERNMENT'S RESPONSE TO MOTION TO REVIEW
AND REVOKE DETENTION ORDER /*United States v. Jason DeSimas*,
CR20-222RAJ - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**C.      No Conditions Will Reasonably Assure the Defendant's Appearance or the Safety of the Victims and Others.**

Applying the factors set forth in 18 U.S.C. § 3142(g), there is ample evidence to support a finding that no conditions of release will reasonably assure the safety of the community, the victims, witnesses, and others in the community. Nor are there any conditions that will reasonably assure the appearance of the defendant at future court proceedings. The government addressed these factors in its memorandum in support of detention, and incorporates its arguments and proffer of information as though fully restated herein. *See*, Dkt. 16 at 5-6.

      1.   *Nature and Circumstances of the Offense*

The nature and circumstances of the offense support detention. The charged offenses are serious crimes of violence that involved racially-motivated violent conduct directed at T.S., a Black man, captured on video. DeSimas lied to federal agents to mislead them about his involvement and participation in the

DeSimas specifically traveled from Tacoma, Washington, to Snohomish County on December 7, 2018, to attend the annual Martyr's Day event on Whidbey Island on December 8, 2018. He posted a flyer about the event on his Facebook account. *See* Dkt. 17, Exhibit B. Martyr's Day is held on the anniversary of the death of Robert J. Matthews, the founder of The Order, a white supremacists terrorist organization. *See* https://www.splcenter.org/hatewatch/2014/12/16/hammerskins-gather-remember-founder-order. Attendance at Martyr's Day includes participants by members of Hammerskin Nation, and especially, the Northwest members of the Hammerskins. *Id.* Through this investigation, the government learned that DeSimas and a large group of other members and associates of the Hammerskins and Crew 38 had traveled to Snohomish County to gather together on December 7, 2018. Approximately 17 people in this group were at the restaurant and bar where T.S., J.B., and A.D. were assaulted. Eight members of that group were arrested, with the other ten people, including DeSimas, having fled from the scene. The investigation has also shown that DeSimas, having successfully evaded the

GOVERNMENT'S RESPONSE TO MOTION TO REVIEW
AND REVOKE DETENTION ORDER /*United States v. Jason DeSimas,*
CR20-222RAJ - 8

police, proceeded to Whidbey Island to attend Martyr's Day on December 8, 2018. He went with other members of the group who had been at the bar, including co-defendant Jason Stanley.[5]

### 2. *Weight of the Evidence*

The weight of the evidence against DeSimas is similarly strong. Video evidence, victim and witness statements, the recorded interview of DeSimas by agents, and Facebook account images and posts are the foundation of the strength and weight of the evidence that DeSimas assaulted and attacked T.S., based on T.S.'s race.

DeSimas has been identified by law enforcement as having distinct tattoos – including a white power tattoo on his chest and a tattoo of a devil's face on his neck. *See* Exhibit A. The 'devil's' tattoo was noted by T.S. and J.B. when they told law enforcement that one of the men involved in the assault, and specifically by T.S., the man who was using the 'n—ger' word towards him, had that tattoo.

### 3. *History and Characteristics of the Defendant*

DeSimas is a long-avowed white supremacist with deep bias and racist views about and towards Black persons. Docket 17, Exhibit B  (filed  under seal) includes a sampling of social media images and posts that depict DeSimas' views and attitudes towards Black people and his dedication to racist views and in support of Adolph Hitler and Nazi attitudes. Exhibit B, attached to this response, includes a sampling of posts and images from Facebook accounts, including a photograph that shows DeSimas with other men wearing Crew 38 flight jackets. Exhibit B at 5.

### 4. *Nature and Seriousness of the Danger to Any Person*

DeSimas has a prior felony conviction for assault third degree. His Facebook posts and images about Black people are not only derogatory, but express a deep-seated hatred towards the Black race. Witnesses interviewed by the government have described

---

[5] Photographs of DeSimas and others were later posted on Facebook accounts showing DeSimas and Stanley on the ferry en route to Whidbey Island on December 8, 2018.

GOVERNMENT'S RESPONSE TO MOTION TO REVIEW
AND REVOKE DETENTION ORDER /*United States v. Jason DeSimas,*
CR20-222RAJ - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   DeSimas as dedicated to the principles of Hammerskin Nation and the purity of the white

2   race. They have also portrayed DeSimas to be especially vocal about his white

3   supremacists views, and desire to attack Black persons and Antifa members. And a year

4   later, on December 8, 2018, this desire voiced by DeSimas occurred when he and the co-

5   defendants attacked and assaulted T.S., J.B., and A.D.

6          The totality of DeSimas's acts and conduct demonstrate that he is a danger to any

7   person, including the victims and other witnesses not associated with the Crew 38 group.

8                          **III.  COVID-19 at FDC SeaTac**

9          The government is vigilant about following the number of the Covid-19 positive

10  inmates at FDC SeaTac.  The FDC houses pretrial inmates from Alaska, Idaho, and the

11  two Districts in Washington State, as well as houses defendants serving sentences.

12  Notification of inmates who have pending matters in this District are provided to the U.S.

13  Attorney's Office in this District. There are currently only two pretrial housing units that

14  are isolated because of Covid-19.  Based on information from the Acting Warden as of

15  December 30, 2020, 67 inmates are currently positive for the virus, 65 are awaiting test

16  results, and 137 defendants have recovered.[6] The specific steps being taken by the Acting

17  Warden are explained in his Declaration, filed as Exhibit C. In response to the recent

18  spike in December, the FDC has temporarily stopped having staff members bring

19  telephones to infected inmates' cells for routine legal calls in order to protect the health

20  and well-being of other staff and inmates. Inmates can continue to communicate with

21  their attorneys through written correspondence, and telephone calls in the event of an

22  emergency or in response to a Court order. The FDC is also working to reassign inmates

23  who no longer pose a risk of further contagion to units where they can resume making

24  routine legal calls. This restriction on routine legal calls is temporary, and the FDC has

25  set January 4, 2020, as the date on which it will resume scheduling of legal calls if health

26  _____

27  [6] The government's reference to no known hospitalizations was intended to refer to no hospitalizations as to the

28  December outbreak of the virus affecting this District's pre-trial inmates.  FDC houses 650 inmates.

GOVERNMENT'S RESPONSE TO MOTION TO REVIEW
AND REVOKE DETENTION ORDER /*United States v. Jason DeSimas*,
CR20-222RAJ - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conditions permit. Furthermore, FDC is medically monitoring and,providing medical care to all inmates; quarantining newly admitted inmates such as DeSimas; isolating and quarantining infected inmates; and has enacted other measures to reduce the spread of the infection.  Exhibit C.

DeSimas argues that he is at high risk of contracting the virus because of having had his spleen removed and because of trauma-induced damage to his lungs. However, he provides no medical information to support this claim. He also fails to explain how he has protected himself from contracting the virus since he is purportedly at high risk. In a Facebook posting in November 2020, DeSimas posed with other persons in his tattoo shop, and was not wearing a mask nor appeared to have social distancing measures in place at his business.  On November 3, 2020, DeSimas claimed to be in Las Vegas, Nevada; San Diego, California, and Banning, California. These activities are inconsistent with claims of being at high risk for the virus, and are inconsistent with a genuine concern for taking precautionary measures to protect himself from potential exposure to the coronavirus.  *See* Exhibit B at 1, 4.

## IV.  EVIDENTIARY HEARING IS NOT NECESSARY

DeSimas seeks an evidentiary hearing.  The government submits that an evidentiary hearing is not necessary in view of the proffered evidence about the nature and seriousness of the crime, the weight of the evidence, and DeSimas's obstructive conduct. Further, it is undisputed that DeSimas has a lengthy criminal history which includes failure to appear and fugitive warrants. This Court should deny the request for an evidentiary hearing.

## CONCLUSION

Accordingly, the United States respectfully submits that there are no conditions of release that will reasonably ensure that Jason DeSimas will not obstruct justice nor assure the safety of T.S., J.B., A.D., witnesses, and others in the community, nor are there conditions that will reasonably assure DeSimas's appearance at future proceedings. In light

GOVERNMENT'S RESPONSE TO MOTION TO REVIEW
AND REVOKE DETENTION ORDER /*United States v. Jason DeSimas,*
CR20-222RAJ - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of the factors set forth in 18 U.S.C. § 3142(g), this Court should detain Jason DeSimas pending trial.

Dated this 30th day of December, 2020.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

*/s/ Ye-Ting Woo*
YE-TING WOO
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: 206.553.2268
Fax: 206.553.4440
Email: ye-ting.woo@usdoj.gov

*/s/ Christine M. Siscaretti*
CHRISTINE M. SISCARETTI
Trial Attorney
Civil Rights Division
U.S. Department of Justice
Email: Christine.Siscaretti@usdoj.gov

GOVERNMENT'S RESPONSE TO MOTION TO REVIEW
AND REVOKE DETENTION ORDER /*United States v. Jason DeSimas,*
CR20-222RAJ - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970