# EXHIBIT C

# DECLARATION OF PATRICK DEVENEY

STATE OF WASHINGTON )
)
COUNTY OF KING )

I, PATRICK DEVENEY, an Associate Warden with the Federal Bureau of Prisons (BOP) at the Federal Detention Center located in SeaTac, Washington (FDC SeaTac), having been duly sworn, state as follows:

## DECLARANT BACKGROUND

1. As an Associate Warden at FDC SeaTac, my primary duty is to serve as deputy to the Warden, including serving as acting Warden during the Warden's absence. In this position, I am responsible for exercising control and supervision of various aspects of the institution's functions including, but not limited to, programs, operations, medical, mental health, clinical programs, custody, transportation, industries and education. At FDC SeaTac, I am directly responsible for the health and safety of both the staff and inmate populations. FDC SeaTac is an Administrative Facility with a staff of approximately 225 correctional officers and an inmate population of approximately 675 pre-trial and designated inmates requiring all levels of custodial security and supervision. During my 10-year BOP career, I have held a variety of positions that provided me with specific insight into inmate programs and legal procedures for five different facilities across the nation. I have specialized experience managing pre-trial, case study offenders, and individuals requiring restoration of competency to stand trial.

## FACTS

2. In response to the COVID-19 pandemic, the BOP has instituted a number of measures at FDC SeaTac to prevent the spread of the virus. Over the last year, FDC SeaTac has made every effort to comply with BOP and Centers for Disease Control and

AFFIDAVIT OF DEVENEY - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Prevention (CDC) guidance[1] to protect inmates' health and well-being, while also protecting and respecting their rights. Despite FDC SeaTac's best efforts to keep inmates safe from COVID-19, the FDC has recently seen a spike in the number of inmates and staff who have tested positive for COVID-19. For example, on December 16, 2020, the FDC had 85 inmates and 16 staff test positive for COVID-19, and on December 21, 2020, the facility received notice of an additional 39 positive inmate cases. These numbers account for both pre-trial inmates across a variety of judicial districts and designated inmates currently serving their sentence at the facility. At present, due to the prevalence of inmates who have either tested positive or are in the process of recovering/receiving follow-up testing, all housing units are under some form of modified operations (e.g., enhanced quarantine and isolation protocols) to ensure compliance with CDC guidelines. Housing unit assignments are routinely re-examined to both minimize the spread of the virus and ensure only the minimum number of inmates necessary are subject to the facility's various isolation and quarantine protocols. As stated below, it is anticipated that restrictions on legal calls will be removed/modified on January 4, 2020. This date was chosen in light of the timing and results of COVID-19 testing and public health guidance about the length of time individuals who have tested positive for COVID-19 should be quarantined.

   3. When an inmate tests positive for COVID-19 at FDC SeaTac, he or she is isolated to help provide the infected inmate with medical care and to prevent further transmission of the virus to other inmates and staff. Throughout this period of isolation, staff follow all recommended CDC guidelines and infectious disease protocol. While inmates are still able to receive mail, commissary items, and reading materials, inmate movement is restricted in accordance with infectious disease transmission protocols to minimize the risk of spread throughout the facility. When inmate movement is deemed

---

[1] *See* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html

AFFIDAVIT OF DEVENEY - 2

necessary, both staff and inmate follow extensive personal protective equipment donning procedures. In addition, while a COVID-positive inmate is in transit, all movement throughout the facility, including staff movement, is ceased. At the conclusion of the inmate movement, corridors and elevators are sanitized as required in accordance with CDC guidance. Medical staff then monitor the infected inmate and provide any necessary medical treatment.

4. In addition, when an inmate tests positive for COVID-19, that result has effects beyond just the infected inmate. The FDC must take measures to determine whether the infection has spread beyond that inmate, and those measures can affect the quarantine and isolation status of other inmates and the infected inmate's unit. These changes are in addition to the more common disruptions that can occur in a prison, and together, these events can and have forced the FDC to cancel or reschedule planned communications between clients and attorneys.

5. Inmates who have tested positive for COVID-19 and are in isolation, have limited access to telephone and video conference facilities to prevent further transmission of COVID-19. Such inmates cannot use common telephone areas to make legal calls because such activity poses considerable risks to other inmates and staff. Until recently, inmates with active cases of COVID-19 had been provided access to telephones for legal calls, with such access provided by staff members who brought a telephone to an isolated inmates' cell. The staff member would then wait outside the cell in an open, common area, possibly for hours at a time, until the call concluded. The staff members wore protective equipment, but as with front line workers in all fields who come in direct contact with people infected with COVID-19, this still posed a substantial risk of infection.

6. In light of the recent spike in the FDC SeaTac's COVID-19 cases, this process of bringing phones to inmates with active cases of COVID-19 has been temporarily suspended, except in case of an emergency.

7. This temporary suspension, however, does not stop all communication between inmates and their attorneys. Inmates can still send and receive written legal correspondence. Letters and other written materials delivered to FDC SeaTac, either by counsel or through the mail, must go through the normal security review process, but generally such materials reach the inmate recipient within 48 hours of arriving at FDC SeaTac. In addition, exceptions to the temporary suspension of routine legal phone calls will be made for urgent legal matters that cannot be delayed until January 4 or handled by sending the information by mail. Such exceptions will be made when ordered by the Court, and otherwise will be considered on a case by case basis.

8. These temporary restrictions on communications do not apply to new arrestees who are separately in quarantine or other inmates at the facility who are not subject to isolation. In addition, when inmates have recovered from COVID-19, they are being transferred out of isolation units to quarantine units, where they can have access to legal calls and videoconferencing.

9. The temporary restrictions on legal calls for inmates with active COVID-19 infections are scheduled to remain in place until January 4, 2020. The risks of infection will continue to be monitored, and these restrictions will be lifted or altered when it is safe to do so, either before or after that scheduled date.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 23, 2020,

P.E. Deveney, Affiant
Acting Warden, FDC SeaTac
Federal Bureau of Prisons

AFFIDAVIT OF DEVENEY - 4