THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR20-222-RAJ |
| Plaintiff, | ) ) | REPLY TO GOVERNMENT RESPONSE TO MOTION TO REVIEW |
| v. | ) ) | AND REVOKE MAGISTRATE JUDGE'S DETENTION ORDER AND |
| JASON DESIMAS, | ) ) | MEMORANDUM OF LAW IN SUPPORT |
| Defendant. | ) ) | |

Jason DeSimas, though counsel, submits this Reply to the Government's Response (Dkt. 24) to his Motion to Review and Revoke the Magistrate Judge's Detention Order (Dkt. 21).

The government has failed to meet its burden of showing that no condition or combination of conditions could assure the Court that Mr. DeSimas will appear at his court dates and will not pose a risk of danger to his community.

I. **The Government has not shown Mr. DeSimas Poses an Unmitigable Risk of Flight**

The government's argument as to risk of flight primarily relies upon out of touch value judgments and assumptions about Mr. DeSimas's living and working situation and rationalization of its own lack of urgency in commencing this case.

In order to find something that might stick, the government sent federal law enforcement *back* to Mr. DeSimas's apartment to *re-question* two individuals at his proposed release address on the day it filed its response, December 30, 2020. Despite

REPLY TO GOVERNMENT RESPONSE TO
MOTION TO REVIEW AND REVOKE
DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 1

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

the fact that these individuals were frightened and aware that their answers to any questions were already under attack and scrutiny by the government, nothing about their answers conflicted with what the Pretrial Services Report reflects. Mr. DeSimas has a stable residence where he can return upon release. He will be required to receive advanced approval from Pretrial Services if he is going to change his residence at any time. He will also be on GPS monitoring. These conditions are more than adequate to mitigate any risk of flight he might pose.

It bears repeating that Mr. DeSimas does not have any interest or incentive to flee. He has proven that he is not a flight risk by immediately contacting defense counsel to arrange his self-surrender once he was aware that he was being sought by law enforcement. Not only did he appear when he promised, he arrived early and prepared to make sure the process was smooth and safe for all involved.[1]

The government's attempts to rationalize its two-year delay in bringing this case are relevant to both risk of flight and danger. First, as to risk of flight, by the government's own theory, Mr. DeSimas would have known about the investigation into the December 2018 incident since it happened. He did not move or otherwise attempt to hide. He was questioned by federal law enforcement about the incident in December of 2019. He continued to live and work here in the Western Washington/Tacoma area as he has for the last two decades.

Multiple people were arrested, questioned and charged almost immediately after the 2018 incident. The government notes that the investigation into this case and the identification and affiliations of various individuals was "laborious and time-consuming" and cites to social media throughout its brief. A simple Google search shows that much of the information about alleged affiliations and the identification of

---

[1] In its opening motion, defense counsel mistakenly identified Mr. DeSimas's date of self-surrender as Monday, December 20, 2020. It was Monday, December 21, 2020.

REPLY TO GOVERNMENT RESPONSE TO
MOTION TO REVIEW AND REVOKE
DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

individuals cited to by the government was already public and had been recreated and posted publicly on the internet by various non-law enforcement groups.

The government's exhibits relating to Mr. DeSimas's Facebook postings do not support detention. The government cites to a self-edited section of Facebook in which individuals can say where they have moved or lived in their past. *See* Dkt. 24-2. They attach a section of Mr. DeSimas's alleged Facebook profile that indicates that he "moved to" Las Vegas Nevada, and yet was in both Escondido, California, and Banning, California, all on November 3. *Id.* This was clearly a day that someone tried and failed to indicate on Facebook the different places that they had lived—not where they were presently. This is clear through the fact that one of these entries notes that the location was where Mr. DeSimas "grew up." *Id.* As noted in the Pretrial Services Report, these are, in fact, three places where Mr. DeSimas lived before settling in Washington, not three places he moved to or visited on November 3.

## II.  The Government Has Not Shown that Mr. DeSimas Poses an Unmitigable Danger to the Community

Any danger to the community can be mitigated by the conditions proposed by Pretrial Services.[2]

The government cites to Mr. DeSimas's alleged viewpoints and affiliations to argue that he is an unmitigated risk of danger to other people. Whether or not these views or affiliations are correctly attributed to Mr. DeSimas, and whether or not they are abhorrent, they are not unique to him or any alleged group that the government identifies here. Even if proven, these views cannot serve as the basis for finding Mr. DeSimas is an unmitigable danger to the community.

---

[2] The government cites to witness interviews not provided to defense counsel that seem to have occurred or reference events sometime in 2017. Defense counsel asks that the government immediately produce these statements or that the Court place no weight in the opinions allegedly expressed about Mr. DeSimas.

REPLY TO GOVERNMENT RESPONSE TO
MOTION TO REVIEW AND REVOKE
DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 3

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

The government argues that it is these viewpoints combined with the nature of the alleged crime that requires detention based upon perceived danger. However, the nature of the alleged crime and the intent behind any alleged assault remains to be proven beyond a reasonable doubt by the government. Even if the government's evidence is strong in this case, as a judge in this District succinctly stated, "[t]o qualify for pretrial detention, a person must do more than commit deplorable acts; they must meet the statutory prerequisites set forth in 18 U.S.C. § 3142." *United States v. Djoko*, No. Cr 19-0146-JCC, 2019 WL 4849537, at *2 (W.D. Wash, Oct. 1, 2019) (reversing detention order and releasing defendant charged with "deplorable acts" involving "outing" an individual's sexual orientation "in a way that put that individual in real danger").

The government argues that Mr. DeSimas is a "long-avowed white supremacist." Dkt. 24 at 9. Nonetheless, his criminal history consists of drug and theft related crimes and is almost entirely devoid of any crimes involving violence. Mr. DeSimas does not pose a risk of danger to the community.

Finally, as to the delay in the filing of these charges, the government notes that "a rush to judgment with the filing of a criminal complaint was not appropriate in this case." Dkt. 24 at 7. This is exactly the point—the government did not think that it was important or appropriate to rush the commencement of legal proceedings in this case, despite Mr. DeSimas and his codefendants remaining at liberty. Yet it now asks that the Court find that Mr. DeSimas poses such a risk of danger and flight that it must detain him *two years later*.

The government's red herring arguments about the length and detailed investigation necessary to identify Mr. DeSimas and other individuals should be dismissed by the Court. As noted in Mr. DeSimas's initial briefing—*he* was identified at least a year ago when agents came and questioned him. When the Court considers the

REPLY TO GOVERNMENT RESPONSE TO MOTION TO REVIEW AND REVOKE DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 4

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

totality of the facts and investigation that was publicly available in this case, the argument further strains credulity, given that eight individuals were arrested immediately after the alleged incident in 2018—including two of the named defendants in this case.[3]

The conditions recommended by Pretrial Services, including GPS monitoring, a drug assessment, treatment and testing, and orders not to contact individuals involved in the case are sufficient to ensure that Mr. DeSimas will pose no risk to the community on pretrial release.

### III.   COVID-19

The government is in a difficult position when it comes to arguing that FDC Seatac is a safe place to house pretrial inmates, as each argument it has made over the past ten months has lost any credibility in the face of uncontrolled outbreaks at the facility. Now, the argument is that "*only* two pretrial housing units…are isolated because of Covid-19." Dkt. 24 at 10 (emphasis added). Doing the math as set out by the government in its briefing and the accompanying declaration of the Associate Warden—even assuming the unlikely possibility that the outstanding 65 COVID tests referenced therein are all negative—30% of the total inmate population at FDC Seatac has been infected with COVID.  That percentage will likely increase when the 65 test results come back. No matter how the government frames that number and no matter how sympathetic the Court may be to the difficulties faced by the Bureau of Prisons in managing a global pandemic, those numbers do not support the government's contention that the FDC is capable of controlling spread or ensuring the safety of its inmates.

---

[3] Defense counsel has not yet received discovery in this case, so cannot identify specific dates when Mr. DeSimas became a suspect, but it is clear that he was a target by December of 2019.

REPLY TO GOVERNMENT RESPONSE TO MOTION TO REVIEW AND REVOKE DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 5

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

The government and FDC argue that the communication issues experienced by counsel are going to be limited—and that counsel and inmates can still use the mail to communicate with each other. But, the government also faults Mr. DeSimas for not having the "medical information to support" his claims of vulnerability to COVID. Dkt. 24 at 11. This argument provides the perfect opportunity to explain why the situation at FDC is untenable for defense counsel to have effective communication with clients.

Usually, if defense counsel needed access to a client's medical records, releases would be provided and signed at or before an initial appearance. Currently, because the initial meeting between defense counsel and clients occurs remotely, this is not a possibility. Pre-COVID, if releases were not signed and a client was detained, a member of the defense team could make a quick visit to FDC the following day, where a client would be called down from a unit to a visiting room, be able to have a private conversation with counsel in which they discussed the types of releases necessary, where to sign and review their medical history. The releases would then be sent out and the defense team would begin the process of requesting that returns be expedited if necessary in a proceeding such as this. Even then, there was no guarantee that such records would be received within two weeks. Additionally, before this year, sending in legal mail to a client at FDC and receiving it back took—on average—two days either way.

Now, in order for defense counsel to get a client to sign and return a release, it must be mailed to the client, defense counsel must attempt to schedule a legal call (which may or may not happen depending on the situation at the FDC) to explain where and how to initial or sign various releases and to learn where such releases should be sent, and then hope that the mail reaches the client at FDC within 5 days. Even if it does, inmates at FDC have limited access to commissary to get stamps, counsel has not been permitted to send in self-addressed stamped envelopes, and it remains unclear how

REPLY TO GOVERNMENT RESPONSE TO MOTION TO REVIEW AND REVOKE DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 6

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1  long it would take to receive the signed releases given the circuitous path it must take
2  between a quarantined or isolated inmate to defense counsel's office.
3      The lack of sufficient access to Mr. DeSimas and his risk of contracting COVID
4  while housed at the FDC weighs in favor of his release.
5      Finally, the government included a Facebook photo that actually supports Mr.
6  DeSimas's compliance with COVID regulations. Dkt. 24-2. The photo is a "selfie"
7  taken from behind a counter, far more than six feet away from a group of masked
8  individuals in what appears to be a tattoo shop. Mr. DeSimas is facing away from the
9  individuals and it appears that another *masked* person is behind the counter bending
10 down to assist the customers. *Id.*

## IV.  Conclusion

The government has failed to meet its burden to show that no condition or combination of conditions can be imposed to mitigate any risk of flight or danger to the community. This Court should order Mr. DeSimas released with the standard and special conditions recommended in the Pretrial Services Report.

DATED this 1st day of January 2021.

Respectfully submitted,

s/ *Sara Brin*
Assistant Federal Public Defender
Attorney for Jason DeSimas

REPLY TO GOVERNMENT RESPONSE TO
MOTION TO REVIEW AND REVOKE
DETENTION ORDER
(*United States v. DeSimas*, CR20-222-RAJ) - 7

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100