Hon. Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>JASON DESIMAS,<br><br>                    Defendant. | No. 2:20-cr-00222-RAJ<br><br>ORDER DENYING MOTION TO REVIEW AND REVOKE DETENTION ORDER |

## I.  INTRODUCTION

This matter comes before the Court on Defendant's Motion to Review and Revoke Magistrate Judge's Detention Order.  Dkt. 21.  After reviewing the parties' briefs, the relevant case law, and the record, the Court finds that oral argument is unnecessary and the defendant's request for a hearing is declined.  For the reasons below, the Court **DENIES** defendant's motion.

## II.  BACKGROUND

On December 16, 2020, a federal grand jury in this District returned a seven-count Indictment charging the defendant, among others, with three counts of Hate Crime, in violation of Title 18, United States Code, Sections 2 and 249(a)(1), and False Statements, in violation of Title 18, United States Code, Section 1001.  Dkt. 1.

On December 18, 2020, law enforcement attempted to execute a warrant issued in this case but were unsuccessful in locating the defendant at his residence, business or sister's home.  He subsequently self-surrendered.

ORDER - 1

On December 21, 2020, a detention hearing was held before Magistrate Judge Paula McCandlis. After weighing the Bail Reform Act factors, she concluded that no condition or combination of conditions which the defendant could meet would reasonably assure his appearance as required and the safety of any other person and the community. Dkt. 20. The defendant was ordered detained pending trial. This motion followed.

### III.  LEGAL STANDARD

Both parties accurately identify that a District Court reviews *de novo* a magistrate judge's order for pretrial detention. *United States v. Koenig,* 912 F.2nd 1190, 1192-93 (9th Cir. 1990). Both parties also accurately identify the Title 18 U.S.C. § 3142(g) factors this Court must consider in deciding whether to detain the defendant pending trial. In making this determination, this Court is statutorily guided that a finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. *Id.* Additionally, a finding that no condition or combination of conditions will reasonably assure the defendant's appearance must be established by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

### IV.  DISCUSSION

**A.   Defendant Poses a Risk of Danger.**

The Court begins its analysis of the defendant's motion with a review of the Pretrial Services Report. Dkt. 13. That report reflects the defendant's lengthy and significant criminal history. While his overall history reflects several driving while license suspended offenses, it includes felony convictions, prior felony assault, 13 failures to appear, two fugitive warrants, and committing criminal law violations while on probation, including the instant offense. Aside from his lengthy criminal

track record are the allegations associated with the instant offense and are reflected in the government's opposition papers.

These representations include allegations that on December 8, 2018, after beating and striking T.S., the defendant continued to yell and threaten that he would assault T.S. again. While this allegation reflects facts two years old, it does not minimize the danger the defendant poses to the alleged victim, as he was only recently arrested. Dkt. 24. The alleged victim's continued fear of the defendant is clearly expressed in T.S.'s voluntary statement to the Court. Dkt. 17, Ex. C.

The defendant suggests that because he has been in the community for the past two years while this matter was being investigated, he is not a danger to the community or a flight risk. The Court discounts this argument because the defendant was presumably unaware of the details of the government's investigation during that time. Now that he has been indicted the details of the government's investigation have or will be revealed to him which means law enforcement contacts with numerous witnesses will be known to him and, under the circumstances of the case, he poses a danger to other persons, particularly the alleged victims and other Black members of our citizenry.

Factoring into this determination is the government's representation of the video recordings of the defendant's actions as well as statements of witnesses that the defendant and his co-defendants were punching and striking T.S. and the other victims and repeatedly calling T.S. the "N" racial epithet before, during, and after the assault. As a result of this attack, T.S. has represented that he is "hypervigilant" and "fearful" of his safety at all times.

Likewise in the government's proffer is evidence of the defendant's animus toward Black people as can be clearly surmised from the statements he made to the FBI agents in a taped interview, his admission to being a member of Hammerskin, a white supremacist organization, and the imagery in social media postings attached to the government's briefing. Dkt. 24. As noted in the government's briefing, this

organization is a national and international white supremacist organization known for violence, notably against Black persons. Dkt. 16.

The nature and circumstances of the offense reflect serious crimes of violence that suggests they were racially motivated as it was directed at T.S., a Black man, captured on video. The timing of this action is of significance in the Court's evaluation of the offense. It occurred the day before the defendant had attended a memorial anniversary event celebrating the death of the founder of The Order, a white supremacist organization. As previously noted, the defendant is a self-admitted member of a white supremacist organization.

The weight of the evidence is a factor considered in this Court's assessment. The Court is mindful that the weight of the evidence can only be considered in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community. *United States v. Motamedi*, 767 F.2nd 1403, 1408 (9th Cir. 1985). Likewise, *Motamedi, Id*. at 1408, instructs that the weight of the evidence is the least important factor for the Court to consider.

In this case the weight of the video evidence, victim and witness statements summarized by the government, the recorded interview of the defendant by agents, and his Facebook account images, collectively are strong regarding the weight of evidence that the defendant assaulted T.S. based on his race, and that he is a continuing danger to the victim and other members of the Black race.

The defendant's history and characteristics as referenced above suggest that the defendant has long held deep bias and racist views about and towards Black persons. Dkt. 17, Ex. B. These postings as well as the multiple representations by the government as to the defendant's history weigh against him in any assessment of his character and history. The totality of the defendant's acts and conduct demonstrate he is a danger to any Black person, including the victims and other witnesses not associated with his beliefs or organization of white supremacists.

While the defendant is presumed innocent and nothing in the Bail Reform Act may be construed as modifying or limiting that presumption, 18 U.S.C. § 3142 (j), the Court has considered what is reflected in the government's proffer of evidence balanced against that of the defendant.

The clear and convincing evidence in this case warrants a finding that the defendant is a risk of danger based on the nature of the offense, safety concerns for the victim, including criminal activity while under supervision in the past, as well as the defendant's alleged willingness to act violently toward Black people because of those beliefs.

**B. The Defendant is a risk of nonappearance.**

The Court acknowledges that the defendant self-surrendered and this is a mitigating factor in the assessment of his risk of nonappearance. However, when considering the factors set forth in 18 U.S.C. § 3142(g), he should remain detained.

The defendant and his associates have repeatedly given conflicting and inconsistent information about the specific address where the defendant has lived, how long he has lived there, and the length of time he has lived at a claimed residence.

The government's briefing and exhibits provide clear and convincing evidence that the defendant is a flight risk. Despite the defendant's proffer to counter this risk, the Court is not persuaded. The government detailed the substantial efforts they engaged to locate the defendant. These efforts were not insignificant. It appears they conducted dozens of instances of surveillance and spot checks on possible addresses where the defendant might be located, including his business. Dkt. 16. None were successful. These surveillance efforts included various times of the day and night, as well as on different days of the week. These surveillance efforts to locate the defendant occurred at various addresses in Tacoma and Puyallup, as well as the residence of the defendant's sister.

Most significant in the Court's analysis is the government's representation that on December 18, 2020, law enforcement contacted multiple individuals at multiple addresses. When contacted they claimed not to know the defendant, his phone number or current residence, and suggested he may be in Puyallup, Graham, or Spanaway. The Court agrees with the government's conclusion about the defendant's contact with the Federal Defender's Office. While the Court is not condemning the defendant for securing counsel, the concern is how the defendant learned of efforts to locate him. It appears that at least one of the individuals whom law enforcement contacted did, in fact, communicate with the defendant to advise him of the outstanding warrant. This leads the Court to conclude that associates of the defendant will not be cooperative with any future attempts at locating him if he were to flee or conceal himself.

### C.  Pre-Trial Detention at FDC Sea-Tac.

The Court now turns to the defendant's concerns regarding COVID-19 at the FDC. Before the Court analyzes defendant's health concerns, the issue of the conditions at the FDC must be addressed. This Court has been diligent monitoring conditions at the FDC. As of the date of this Order, the current conditions indicate that while the virus and infection rate is unpredictable, it does not appear that at this point they have been unmanageable:

| | |
|---|---|
| Inmates Positive | 1 |
| Staff Positive | 10 |
| Inmate Deaths | 0 |
| Staff Deaths | 0 |
| Inmates Recovered | 239 |
| Staff Recovered | 26 |

The specific steps being taken by the FDC to monitor and address the virus conditions are reflected in the government's submission of evidence. Dkt. 24, Ex. C. At best, the defendant raises general concerns about possible exposure to COVID-

19. The concerns he has expressed apply to everyone in confinement and do not independently constitute a basis for the relief he requests.

More specifically, the defendant raises complaints about his health, raising general claims of lung damage and having had his spleen removed. The defendant has not supplied any medical records to support his claim and how these health claims "exponentially" give him a higher chance of contracting the virus. In addition, the Court is unaware that the defendant's general claims of lung and spleen issues have been listed by the Centers for Disease Control and Prevention as constituting an increased risk of severe illness from the virus.

As to the ability to communicate with counsel, the Court acknowledges it is a challenge for incarcerated individuals to communicate with counsel due to the virus restrictions. The defendant has not demonstrated a complete inability to communicate with counsel, or to an extent to constitute a constitutional deprivation of the right to counsel. The record suggests that the restriction on legal calls is temporary and the FDC had set January 4, 2020 as the date on which it would resume scheduling of legal calls if health conditions permit. Dkt. 24, p. 10-11. The Court has no evidence to the contrary.

## V. CONCLUSION

In light of the foregoing, the Court finds that there are no conditions or combination of conditions that will reasonably assure the appearance of the defendant at future proceedings and the safety of any other person.

The Court began its analysis of the defendant's motion referencing the Pretrial Services Report and will end with the same. That report noted that the defendant is viewed as a risk of nonappearance based on his history of failures to appear, history of noncompliance while under supervision, and history of substance abuse. That same report viewed the defendant as a risk of danger based on the nature of the offense, safety concerns for the victim, and his criminal history,

including criminal activity while under supervision. Despite these conclusions Pretrial Services recommended conditions of release that would reasonably assure future court appearances and address danger to other persons or the community. This Court strongly disagrees for all the reasons articulated in this Order.

Based on the foregoing reasons, the Court **DENIES** the defendant's Motion to Revoke the Magistrate Judge's Detention Order.

DATED this 28th day of January 2021.

_____
The Honorable Richard A. Jones
United States District Judge