Judge Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR20-222-RAJ |
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| JASON DESIMAS, | |
| Defendant. | |

The United States of America, by and through Nicholas W. Brown, United States Attorney for the Western District of Washington, and Rebecca S. Cohen, Assistant United States Attorney for said District, and Kristen Clarke, Assistant Attorney General, United States Department of Justice, Civil Rights Division and Trial Attorney Christine M. Siscaretti, and Defendant Jason DeSimas and Defendant's attorney, Stephan Illa, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure Rule 11(c)(1)(A) and (B).

1.     **The Charges**.  Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to the following charges contained in the Indictment.

a.     *Hate Crime*, as charged in Count 1, in violation of Title 18, United States Code, Section 249(a)(1); and,

Plea Agreement - 1
*United States v. Jason DeSimas*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b.      *False Statement*, as charged in Count 4, in violation of Title 18, United States Code, Section 1001.

By entering pleas of guilty, Defendant hereby waives all objections to the form of the charging document.  Defendant further understands that before entering any guilty plea, Defendant will be placed under oath.  Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2.      **Elements of the Offenses**.  The elements of the offenses to which Defendant is pleading guilty are as follows:

a.      Count 1 - *Hate Crime*

First, the defendant willfully caused bodily injury, and,

Second, the defendant acted because of the actual or perceived race, color, religion, or national origin of any person.

b.      Count 4 - *False Statement*

First, the defendant made a false statement;

Second, the statement was made in a matter within the jurisdiction of a government agency;

Third, the defendant acted willfully with knowledge that the statement was untrue and that his conduct was unlawful; and,

Fourth, the statement was material to the activities or decision of the government agency.

3.      **The Penalties**.  Defendant understands that the statutory penalties applicable to the offenses to which Defendant is pleading guilty are as follows:

a.      Count 1 - *Hate Crime*

A maximum term of imprisonment of up to ten years, a fine of up to $250,000, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100.

b.      Count 4 - *False Statement*

Plea Agreement - 2
*United States v. Jason DeSimas*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

A maximum term of imprisonment of up to five years, a fine of up to $250,000.00, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100.00.

If a probationary sentence is imposed, the probation period can be for up to five (5) years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

Defendant understands that, if pleading guilty to a felony drug offense, Defendant will become ineligible for certain food stamp and Social Security benefits as directed by Title 21, United States Code, Section 862a.

4.      **Immigration Consequences**.  Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States.  Under federal law, a broad range of crimes are grounds

Plea Agreement - 3
*United States v. Jason DeSimas*, CR20-222-RAJ

1  for removal, and some offenses make removal from the United States presumptively

2  mandatory.  Removal and other immigration consequences are the subject of a separate

3  proceeding, and Defendant understands that no one, including Defendant's attorney and

4  the Court, can predict with certainty the effect of a guilty plea on immigration status.

5  Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any

6  immigration consequences that Defendant's guilty pleas may entail, even if the

7  consequence is Defendant's mandatory removal from the United States.

8      5.    **Rights Waived by Pleading Guilty.**  Defendant understands that by

9  pleading guilty, Defendant knowingly and voluntarily waives the following rights:

10             a.    The right to plead not guilty and to persist in a plea of not guilty;

11             b.    The right to a speedy and public trial before a jury of Defendant's

12  peers;

13             c.    The right to the effective assistance of counsel at trial, including, if

14  Defendant could not afford an attorney, the right to have the Court appoint one for

15  Defendant;

16             d.    The right to be presumed innocent until guilt has been established

17  beyond a reasonable doubt at trial;

18             e.    The right to confront and cross-examine witnesses against Defendant

19  at trial;

20             f.    The right to compel or subpoena witnesses to appear on Defendant's

21  behalf at trial;

22             g.    The right to testify or to remain silent at trial, at which trial such

23  silence could not be used against Defendant; and

24             h.    The right to appeal a finding of guilt or any pretrial rulings.

25      6.    **United States Sentencing Guidelines**.  Defendant understands and

26  acknowledges that the Court must consider the sentencing range calculated under the

27  United States Sentencing Guidelines and possible departures under the Sentencing

28  Guidelines together with the other factors set forth in Title 18, United States Code,

Plea Agreement - 4
*United States v. Jason DeSimas*, CR20-222-RAJ

Section 3553(a), including: (1) the nature and circumstances of the offenses; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

   a.   The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

   b.   After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

   c.   The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

   d.   Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

   7.   **Ultimate Sentence**. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

   8.   **Statement of Facts**. The parties agree on the following facts. Defendant admits he is guilty of the charged offenses. The statement of facts does not contain each and every fact known to defendant and to the United States concerning Defendant's involvement in or knowledge of the offenses.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Count 1 – Hate Crime**

a.      On or about December 8, 2018, in Snohomish County, Washington, Defendant Jason DeSimas willfully caused bodily injury to T.S., a black man, and aided and abetted other individuals in doing so, because of T.S.'s actual or perceived race. DeSimas and other individuals also aided and abetted each other in willfully causing bodily injury to J.B. and A.D because of T.S.'s actual or perceived race.

b.      At the time of the assault, DeSimas was a prospective member of the Hammerskins, a white supremacist group that believed in the advancement and superiority of the white race, and that promoted racist beliefs and attitudes towards persons of color, including black persons.

c.      At times prior to December 7, 2018, DeSimas had discussed using the tactic of "mutual combat" against members of groups whose beliefs DeSimas opposed, such as Antifa and Black Lives Matter. According to this tactic, DeSimas believed that he and others could go to bars frequented by Antifa and Black Lives Matter supporters, and have one or more associates initiate a fight with Antifa and/or Black Lives Matter supporters. When the fight began, others could jump in and assault the Antifa/ Black Lives Matter supporters. When the police arrived, DeSimas and associates acting with him could claim a defense of "mutual combat."

d.      On December 7, 2018, DeSimas traveled to Lynnwood, Washington, with others for the purpose of attending events related to "Martyr's Day," an annual gathering honoring a white supremacist who died in a shootout with federal agents on Whidbey Island in the 1980s. On the evening of December 7, 2018, DeSimas attended an informal gathering at a residence in Lynnwood, Washington. The gathering was also attended by other individuals who were members or prospective members of the Hammerskins or Crew 38 (a Hammerskins support group), or who were aligned with the white supremacist beliefs of the Hammerskins and Crew 38.

e.      Late in the evening of December 7, 2018, DeSimas and a group of more than ten other individuals from the gathering (hereinafter referred to as the "Group")

Plea Agreement - 6
*United States v. Jason DeSimas*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    went to a nearby bar and restaurant (hereinafter referred to as "the Lynnwood bar"). The

2    Group arrived at the Lynnwood bar shortly after midnight on December 8, 2018.  The

3    majority of the men in the Group were similarly dressed in dark jeans or pants, black

4    boots, black "bomber" jackets, dark-colored t-shirts, and had crew-cut hairstyles.  Some

5    wore jackets with either Crew 38 patches or other patches known to be aligned with

6    white supremacist beliefs. Many of the shirts worn had phrases, numbers, or logos that

7    expressed white supremacist beliefs and/or memberships, including Crew 38 and the

8    Hammerskins. Many in the group also had visible tattoos, including swastika tattoos, that

9    expressed their views on white race superiority.

10          f.      While in the Lynnwood bar, the Group went onto the dance floor and acted

11   loudly and aggressively. T.S., a black man, was the disc jockey at the bar and he worked

12   on his DJ equipment, playing music, on a small stage next to the dance floor. DeSimas

13   and several other members of the Group saluted each other with outstretched arms with a

14   salute that appeared identical to the Nazi salute multiple times while on the dance floor or

15   walking around the bar, in front of T.S.  At one point, a member of the Group went up to

16   the stage and began manipulating the DJ equipment without T.S.'s permission while T.S.

17   was outside taking a break. T.S. saw the Group member doing this from the doorway.

18   T.S. walked over to the stage and pushed the Group member in an attempt to get this

19   individual away from his equipment.

20          g.      When T.S. attempted to get the Group member away from his DJ

21   equipment, numerous members of the Group, including DeSimas, got on stage and

22   surrounded T.S.  DeSimas went on stage to show his support for the Group. DeSimas and

23   the Group were angry because they believed T.S, a black man, was being disrespectful.

24   DeSimas knew that Group members considered it disrespectful for a black man to touch a

25   white man without permission, and for a black man to challenge conduct or acts by white

26   men.

27          h.      As he surrounded T.S. with the other members of the Group, DeSimas said,

28   "What are you doing, nigger?" T.S. told the group they had to leave. DeSimas responded,

Plea Agreement - 7
*United States v. Jason DeSimas*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"We're not going anywhere, ~~n—er~~." More members of the Group came on to the stage, and surrounded T.S. Multiple other members of the Group also used racial slurs against T.S.

nigger."

      i.     T.S. then cursed at the Group. DeSimas responded by calling T.S. a racial slur again, and punched T.S. in the face, knocking T.S. to the floor. DeSimas knew that others in the Group also punched, kicked and/or stomped on T.S. with their boots.

      j.     During the assault, members of the Group continued to yell racial slurs at T.S. DeSimas knew and understood that the assault of T.S. by himself and others was because of T.S.'s race as a black man.

      k.     As a result of the assault, T.S. suffered serious bodily injuries.

      l.     During the assault of T.S., two other men, J.B. and A.D., who were not associated with the Group, attempted to intervene to help T.S. While doing so, J.B. and A.D. were also assaulted by members of the Group. Specifically, both J.B. and A.D., both of whom are biracial, were punched and hit in the face, and both sustained injuries.

      m.     The assault of T.S., J.B., and A.D. ended when one of the Group members told them to leave the Lynnwood bar. DeSimas left the bar with several others, and they drove away. The following day, DeSimas attended the "Martyr's Day" memorial service on Whidbey Island to honor Robert J. Mathews, the white supremacist who was fatally shot during a standoff with FBI agents.

### Count 4 – False Statements

      n.     On December 5, 2019, DeSimas agreed to be interviewed by agents with the Federal Bureau of Investigation about the events of December 8, 2018. DeSimas understood that he was under investigation for a potential federal hate crime offense. During his voluntary interview, DeSimas admitted to the agents that he was involved in the assault of T.S. that occurred on December 8, 2018 in Snohomish County, Washington. DeSimas also admitted to being a member of Hammerskins Nation, and acknowledged that his group aimed to "secure the existence of the white race by staying

Plea Agreement - 8
*United States v. Jason DeSimas*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 with (their) own people" and said that he considers himself a separatist who supports the

2 white race "sticking together."

3        o.     However, during this voluntary interview, DeSimas falsely claimed to the

4 agents that neither he nor anyone else called T.S. a "n‒‒er" "**nigger**" during the assault at the

5 Lynnwood bar. This statement was false, in that DeSimas knew he and others called T.S.

6 a "**nigger**" "n‒‒er" before, during, and after the assault. DeSimas made this false statement to the

7 FBI because he wanted to cover up the motive for the assault, which was the bias that he

8 and the Group had against T.S.'s race. Further, information about the motive for the

9 assault and DeSimas's bias against T.S.'s race was material to the FBI's investigation

10 into the assault of T.S., J.B., and A.D.

11       The parties agree that the Court may consider additional facts contained in the

12 Presentence Report (subject to standard objections by the parties) and/or that may be

13 presented by the United States or Defendant at the time of sentencing, and that the factual

14 statement contained herein is not intended to limit the facts that the parties may present to

15 the Court at the time of sentencing.

16       9.     **Sentencing Factors**. The parties agree that the following Sentencing

17 Guidelines provision apply to this case:

18         <u>Count 1 – *Hate Crime*</u>

19         a.     Base Offense Level of 14 pursuant to Section 2H1(a)(1);

20         b.     Serious Bodily Injury, five-level upward adjustment, pursuant to

21                 Section 2A2.2; and

22         c.     Hate Crime Motivation, three-level upward adjustment, pursuant to

23                 Section 3A1.1.

24         <u>Count 4 – *False Statements*</u>

25         a.     Base Offense Level 6, Section 2B1.1(a)(2).

26 The parties agree they are free to present arguments regarding the applicability of all

27 provisions of the United States Sentencing Guidelines. Defendant understands, however,

28 that at the time of sentencing, that the Court is free to reject the Defendant's arguments

Plea Agreement - 9
*United States v. Jason DeSimas*, CR20-222-RAJ

1   regarding the Sentencing Guidelines, and that the Court is further free to apply additional

2   downward or upward adjustments in determining Defendant's Sentencing Guidelines

3   range.

4        10.   **Acceptance of Responsibility.**  At sentencing, *if* the Court concludes

5   Defendant qualifies for a downward adjustment acceptance for acceptance of

6   responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or

7   greater, the United States will make the motion necessary to permit the Court to decrease

8   the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because

9   Defendant has assisted the United States by timely notifying the United States of

10  Defendant's intention to plead guilty, thereby permitting the United States to avoid

11  preparing for trial and permitting the Court to allocate its resources efficiently.

12       11.   **Agreed Recommendation Regarding Imprisonment**.  Pursuant to

13  Federal Rule of Criminal Procedure 11(c)(1)(B), the parties jointly agree to recommend

14  that the appropriate term of imprisonment to be imposed by the Court at the time of

15  sentencing is a term of thirty-seven (37) months.  Defendant understands that this

16  recommendation is not binding on the Court and the Court may reject the

17  recommendation of the parties and may impose any term of imprisonment up to the

18  statutory maximum penalty authorized by law.   Defendant further understands that

19  Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the

20  Court.   Except as otherwise provided in this Plea Agreement, the parties are free to

21  present arguments regarding any other aspect of sentencing.

22       12.   **Restitution.**  Defendant agrees that the Court can order Defendant to pay

23  restitution to the victims of Defendant's crimes and, in exchange for the agreements by

24  the United States contained in this plea agreement, Defendant agrees that restitution in

25  this case should not be limited to the offenses of conviction.  Defendant is aware that the

26  United States will present evidence supporting an order of restitution for all losses caused

27  by all of Defendant's criminal conduct known to the United States at the time of

28  Defendant's guilty pleas to include those losses resulting from crimes not charged or

Plea Agreement - 10
*United States v. Jason DeSimas*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   admitted by Defendant in the Statement of Facts including bodily injury caused to T.S.,

2   J.B., and A.D.  In exchange for the promises by the United States contained in this plea

3   agreement, Defendant agrees that Defendant will be responsible for any order by the

4   District Court requiring the payment of restitution for such losses.

5           a.      The full amount of restitution shall be due and payable immediately

6   on entry of judgment and shall be paid as quickly as possible.  If the Court finds that the

7   defendant is unable to make immediate restitution in full and sets a payment schedule as

8   contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule

9   represents a minimum payment obligation and does not preclude the government from

10  pursuing any other means by which to satisfy the defendant's full and immediately-

11  enforceable financial obligation, including, but not limited to, by pursuing assets that

12  come to light only after the district court finds that the defendant is unable to make

13  immediate restitution.

14          b.      Defendant agrees to disclose all assets in which Defendant has any

15  interest or over which Defendant exercises control, directly or indirectly, including those

16  held by a spouse, nominee, or third party.  Defendant agrees to cooperate fully with the

17  United States' investigation identifying all property in which Defendant has an interest

18  and with the United States' lawful efforts to enforce prompt payment of the financial

19  obligations to be imposed in connection with this prosecution.  Defendant's cooperation

20  obligations are:  (1) before sentencing, and no more than 30 days after executing this Plea

21  Agreement, truthfully and completely executing a Financial Disclosure Statement

22  provided by the United States Attorney's Office and signed under penalty of perjury

23  regarding Defendant's and Defendant's spouse's financial circumstances and producing

24  supporting documentation, including  tax returns, as requested; (2) providing updates

25  with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within

26  seven days of the event giving rise to the changed circumstances; (3) authorizing the

27  government to obtain Defendant's credit report before sentencing; (4) providing waivers,

28  consents or releases requested by the U.S. Attorney's Office to access records to verify

Plea Agreement - 11
*United States v. Jason DeSimas*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the financial information; (5) authorizing the government to inspect and copy all financial

2  documents and information held by the U.S. Probation Office; (6) submitting to an

3  interview regarding Defendant's Financial Statement and supporting documents before

4  sentencing (if requested by the government), and fully and truthfully answering questions

5  during such; and (7) notifying the United States Attorney's Office before transferring any

6  interest in property owned directly or indirectly by Defendant, including any interest held

7  or owned in any other name, including all forms of business entities and trusts.

8              c.      The parties acknowledge that voluntary payment of restitution prior

9  to the adjudication of guilt is a factor the Court considers in determining whether

10  Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).  In

11  addition, in any event, the government will consider Defendant's cooperation regarding

12  restitution in making its sentencing.

13          13.    **Abandonment of Contraband**.  Defendant also agrees that, if any federal

14  law enforcement agency seized any illegal contraband that was in Defendant's direct or

15  indirect control, Defendant consents to the federal administrative disposition, official use,

16  and/or destruction of that contraband.

17          14.    **Non-Prosecution of Additional Offenses.**  As part of this Plea Agreement,

18  the United States Attorney's Office for the Western District of Washington and the Civil

19  Rights Division of the Department of Justice agree not to prosecute Defendant for any

20  additional offenses in connection with the conduct taking place on December 7-8, 2018

21  that gave rise to this investigation and that is known to the government at the time of this

22  Plea Agreement based upon evidence in its possession at this time, and moves to dismiss

23  the remaining counts in the Indictment against Defendant DeSimas, specifically Counts 2

24  and 3, at the time of sentencing.  In this regard, Defendant recognizes the United States

25  has agreed not to prosecute all of the criminal charges the evidence establishes were

26  committed by Defendant solely because of the promises made by Defendant in this Plea

27  Agreement.  Defendant agrees, however, that for purposes of preparing the Presentence

28

Plea Agreement - 12
*United States v. Jason DeSimas*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Report, the United States Attorney's Office will provide the United States Probation
2  Office with evidence of all conduct committed by Defendant.

3       Defendant agrees that any charges to be dismissed before or at the time of
4  sentencing were substantially justified in light of the evidence available to the United
5  States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant
6  with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119
7  (1997).

8       15.   **Breach, Waiver, and Post-Plea Conduct.**  Defendant agrees that, if
9  Defendant breaches this Plea Agreement, the United States may withdraw from this Plea
10 Agreement and Defendant may be prosecuted for all offenses for which the United States
11 has evidence.  Defendant agrees not to oppose any steps taken by the United States to
12 nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea
13 Agreement.  Defendant also agrees that, if Defendant is in breach of this Plea Agreement,
14 Defendant has waived any objection to the re-institution of any charges that previously
15 were dismissed or any additional charges that had not been prosecuted.

16      Defendant further understands that if, after the date of this Agreement, Defendant
17 should engage in illegal conduct, or conduct that violates any conditions of release or the
18 conditions of confinement (examples of which include, but are not limited to, obstruction
19 of justice, failure to appear for a court proceeding, criminal conduct while pending
20 sentencing, and false statements to law enforcement agents, the Pretrial Services Officer,
21 Probation Officer, or Court), the United States is free under this Plea Agreement to file
22 additional charges against Defendant or to seek a sentence that takes such conduct into
23 consideration by requesting the Court to apply additional adjustments or enhancements in
24 its Sentencing Guidelines calculations in order to increase the applicable advisory
25 Guidelines range, and/or by seeking an upward departure or variance from the calculated
26 advisory Guidelines range.  Under these circumstances, the United States is free to seek
27 such adjustments, enhancements, departures, and/or variances even if otherwise
28 precluded by the terms of the Plea Agreement.

Plea Agreement - 13
*United States v. Jason DeSimas*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

16.     **Waiver of Appellate Rights and Rights to Collateral Attacks.**

Defendant acknowledges that, by entering the guilty pleas required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction.  Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

a.     Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

b.     Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation; and

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

17.     **Voluntariness of Plea**.  Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

Plea Agreement - 14
*United States v. Jason DeSimas*, CR20-222-RAJ

18.     **Statute of Limitations**.  In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to:  (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

19.     **Completeness of Agreement**.  The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter.  This Agreement binds the United States Attorney's Office for the Western District of Washington and the Civil Rights Division of the U.S. Department of Justice.  It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this **8ᵗʰ** day of _April_ , 2022.

_____
JASON DESIMAS
Defendant

_____
STEPHAN ILLA
Attorney for Defendant

_____
REBECCA S. COHEN
Assistant United States Attorney

_____
CHRISTINE M. SISCARETTI
Trial Attorney, Criminal Section
Civil Rights Division

Plea Agreement - 15
*United States v. Jason DeSimas*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970